## W. E. POOLE v. THE H. & T. C. R'Y Co.

(Case No. 3383.)

1. LIABILITY OF ATTORNEY — FRAUD.— A wholesale merchant at Galveston, learning of the insolvency of a firm to whom he had shipped goods by rail, notified the railroad agent at their point of destination of his purpose to stop the shipment *in transitu*, who replied that the shipment would be protected. Afterwards, and before the arrival of the goods, the purchasers assigned the bill of lading without consideration to their attorney, and gave him a written order on the railway agent at an intermediate station for the goods. The attorney then intercepted the shipment before the goods reached their destination at the way station, remarked them in the name of a fictitious firm, effaced from the cases the name of the original purchaser, and reshipped the goods thus marked to their original destination, where they were delivered to the original purchaser. In a suit by the wholesale merchant against the railroad company and the attorney, *held*,

(1) A charge to the effect that to make the attorney liable it must be shown that he was acting, not as agent for the insolvent customer to whom the goods were shipped, but for himself, was error.

(2) The attorney having assumed the apparent ownership of the goods, for the purpose and with the intention of committing a fraud upon the creditor, could not be heard to deny his liability to him for the loss thereby sustained.

(3) Such acts are foreign to the duties of an attorney.

(4) The statute recognizes no such officer as "general freight agent," and service of citation on the station agent having control of freights of the railway company at the point of destination of the goods, was service on the company. Notice to such an agent of stoppage *in transitu* was notice to the company.

(5) Under all the facts of the case, the question of good faith on the part of the agents of the company should have been submitted to the jury with appropriate instructions.

ERROR from Falls. Tried below before the Hon. D. M. Prendergast.

Poole brought this suit January 5, 1875, against the railroad company, J. L. Scott and La Prelle & Bro. (The latter were dismissed on the ground of insolvency.)

The case as made was in effect this: Poole, a merchant in Galveston, sold to La Prelle & Bro., merchants at Marlin, thirteen cases of boots and shoes, November 23, 1874, on a credit of ninety days. On that and the next day the goods were shipped; and on the morning of the 25th, two days after the sale, Poole, ascertaining that the La Prelles were insolvent, immediately telegraphed to his attorney at Marlin to stop the goods. The attorney immediately gave written notice to that effect to the station agent of the railroad company at Marlin, who replied that the shipment would be protected. Subsequently the attorney informed the La Prelles what had been done, and they told him to have the goods reshipped to Poole. Afterwards they assigned their bill of lading to Scott, their attorney, without consideration, and also gave him a written order on the station agent at Hearne for the goods; with these, Scott obtained possession of the goods at Hearne; he erased the name of La Prelle & Bro. from the boxes, and inserted that of J. L. Scott & Co., and reshipped the same on another bill of lading. The goods arrived at Marlin November 30, 1874, and were delivered to a drayman on his presenting the bill of lading of Scott & Co., and the goods were charged and delivered to La Prelle & Bro. Poole failed to secure the possession of the goods, and brought this suit for their value.

The case was tried April 5, 1876, and under the charge of the court the jury returned a verdict in favor of the defendants, and judgment was rendered accordingly.

In the charge of the court the jury was told " that, to make the defendant Scott liable, it must be shown by the evidence that he was acting, not as agent of La Prelle & Bro., but for himself "

*Jackson & Jackson* and *B. L. Aycock*, for plaintiff in error.

*Geo. Goldthwaite*, for the railroad company.

I. La Prelle & Bro. were the owners of the goods, and had the legal right " to anticipate the end of the transitus, and thus put an end to the right of stoppage *in transitu*. Benjamin on Sales, 1 Eng. ed., 649–50; London & N. W. Railway Co. *v.* Bartlett, 7 H. & N. (Exch.), 400; Schouler on Personal Property, vol. 2, p. 592; Woods *v.* Yeatman, 15 B. Mon. (Ky.), 270.

II. It being lawful for La Prelle & Bro. to intercept the goods at

an intermediate point, and this having been accomplished, the original contract of carriage, made at Galveston, upon the receipt of the goods, terminated at Hearne, where La Prelle & Bro., by Scott (if you please), acquired the possession of the goods

III. Fraud cuts no figure in the case; for whatever may be said of the *morale* of the transaction, La Prelle & Bro., in intercepting the goods at Hearne, exercised a legal right.

IV. In order to make the notice effectual, it must be given either to the person who has the immediate custody of the goods, or to the principal whose servant has such custody, at such time and under such circumstances that he may, with reasonable diligence, prevent the delivery of the goods to the purchaser or consignee. Edwards on Bailments (2d ed.), 487; Chitty on Carriers (with Am. notes), 163; Whitehead v. Anderson, 9 M. & W., 533; Houston on Stoppage in Transitu, 54; Benjamin on Sales (1 Eng. ed.), 654; Schouler on Personal Property, 595; Hutchinson on Carriers, § 412.

V. The effect of the notice which was given to the agent at Marlin, upon the company, is to be affected: 1. By the scope and nature of his agency; and 2. The lawful power of the consignee to defeat the consignor's right of stoppage *in transitu.*

VI. If, at the time when the notice was given to the agent at Marlin, he was not then the custodian of the goods, and the business was not then within the scope of his agency, the notice to him was ineffectual for any purpose, was no notice whatever, and he was not required to communicate it to his principal, the company. If the notice to the agent at Marlin was sufficient to stop the goods *in transitu*, it was instantaneously effective upon him, and it was not necessary, and he was not required, to communicate it to the company. Wherefore it is that the law expressly declares that the notice shall be given to the person who has the immediate possession or custody of the goods, or "to the principal whose servant has such custody, at such time and under such circumstances that he may, with reasonable diligence, prevent the delivery of the goods to the purchaser or consignee."

VII. The notice to the company, through the agent at Marlin, was effective only to the extent that the company would be required to act by and through that agent. This proposition is elementary, and is the foundation of the law of notice to principals through agents.

VIII. In order for the consignor to protect himself against the exercise of the consignee's right to intercept and obtain possession of the goods before their arrival at their original destination, where

they would come into the custody of the agent there, it was his duty to give notice to the principal, the carrier, or its agent having the present actual custody of the goods.

IX. The head and the executive officers of the railroad company must, it is to be presumed, always be found at the principal office of the company required by law to be established, and notice of the location to be given to the public by advertisement. Pasch. Dig. of Laws, § 4888, p. 816.

Watts, J. Com. App.— That part of the charge of the court regarding the liability of the appellee Scott is objected to by appellant as erroneous. The evidence disclosed by the record unmistakably shows that after appellant had given notice to the station agent at Marlin of the stoppage *in transitu*, that the La Prelles made a fraudulent assignment of the bill of lading to Scott, and at the same time gave him a written order on the station agent at Hearne for the goods. Armed with these, Scott intercepted the shipment at Hearne, obtained possession of the goods, effaced from the boxes the name of La Prelle & Bro., and inserted that of J. L. Scott & Co. (a bogus firm). He then shipped, by the same line, the goods to the bogus firm at Marlin, taking a bill of lading in that name. When the shipment arrived at Marlin it was delivered to a drayman on his presenting to the agent the J. L. Scott & Co. bill of lading, and was immediately delivered to the insolvent firm of La Prelle & Bro., and thus defeated appellant in getting the rightful possession of his goods.

There is no pretense that Scott did not fully understand and comprehend the object and purpose of the fraudulent assignment of the bill of lading. It is shown by his intercepting and reshipment and delivery of the goods to La Prelle & Bro. On the contrary, by his own evidence it is made to appear that the whole thing had been pre-arranged between him and the La Prelles for the object and with the purpose of defeating the appellant in getting the rightful possession of his own property. It is said by some of the witnesses that he was the attorney for and representing the La Prelles.

Having assumed the apparent ownership of the goods, for the purpose and with the intention of consummating the fraud upon appellant, he will not be heard to deny his liability to appellant for the loss sustained by reason of his wrongful acts, under the privileges of an attorney at law, for such acts are entirely foreign to the duties of an attorney; neither will he be permitted, under such circumstances, to shield himself from liability on the ground that he

was the agent of the La Prelles, for no one is justified on that ground in knowingly committing wilful and premeditated frauds for another. In this particular the charge of the court was clearly erroneous.

The court also instructed the jury as follows: "If you find for the defendant Scott under the preceding instruction, then, to hold the railroad company liable, the evidence must show that the general freight agent was notified not to deliver the goods to the purchaser, or that the agent from whom Scott obtained possession was so notified. Notice to the agent of the company at Marlin alone, would not be sufficient, under these circumstances, to charge the company, and you should find for both defendants."

This charge is also objected to as erroneous. There is no evidence in the record from which it might be inferred that the company had any such employee or officer as a "general freight agent;" and it is not perceived upon what ground the court was authorized to take judicial knowledge of the existence of such an agent, and the scope of his duties and power. Certainly the statute does not name such agent, nor does it define his duties, and there is no general rule of law that requires that notices of this kind must be given to such an agent, so as to bind the company.

When the station agent was informed not to deliver the goods to La Prelle & Bro., he replied that the appellant would be protected in the shipment, thus holding himself out as an agent of the company with regard to freights, and in that department of its business; he says that his duties as station agent are confined to that station, and matters there. This shows that he was the agent of the company in regard to freights at that station. This record also shows that Marlin is the county seat of Falls county, being the place where this case was tried. So, in the absence of evidence showing that the company had another agent at that point, this station agent must be regarded as the agent representing the company in that county. Under the provisions of our statute, service of citation of a suit pending in the courts of that county upon him, constitutes service upon the company. R. S., art. 1223.

As service of citation upon him is service upon the company in the most important suit that might be instituted in the courts of that county, it is not easily perceived why notice to him of stoppage *in transitu* should not be held sufficient notice to the company when the consignment is made to that station or the shipment made from it.

The fact that in the transaction of the business of a railroad com-

pany the methods employed are extensive, and, to one not familiar with them, complicated, their agents, employees and trains numerous, the scope, power and duties of such agents and employees, as well as the relative positions of such trains upon the line, are not supposed to be known to the citizen. When he is called upon to act with reference to business transactions with such a complicated organization, the principles of justice and right ought not to require more of him than to give notice and apply to such agent or agents as are held out by the company as representing it in that department of business. The rule is elementary, that where the principal holds out an agent in such manner as to induce the public to believe that the agent is authorized to transact business of any particular kind, the principal will be bound for the acts of the agent in that particular.

Here the station agent was, to all appearances, held out to the public as the representative of the company at that point, in regard to freights either shipped to or from that station. And it would seem to follow that a notice to him of a stoppage *in transitu* of goods in transit to that point, upon the soundest principles of law and justice ought to be considered as notice to the company.

It is well known that railroad companies operate their own telegraph lines in connection with the business of their road. This is common knowledge, and part of the history of the country, and authorized by the charters granted to railroad companies. This evidences the fact that they have the means of ready communication with all the stations along the road; they are supposed to be informed of the movements of their various trains, and the names, stations and duties of their agents. This being the case, it would be more consistent with right and reason to require the station agent at the point of destination, when informed of the stoppage *in transitu*, to give notice to the proper agents along the line of shipment of that fact, than to place upon the owner such a duty, as, from the very nature of the case, it would be next to impossible for him to accomplish.

We conclude that the charge in this respect was erroneous.

The evidence disclosed by the record, in regard to the delivery of the goods to Scott at Hearne, the remarking and shipping the same to Marlin, their delivery by the agent, notwithstanding the notice to him from the owner, when he was suspicious that they were the Poole goods, outside of the last question considered, should have been submitted to the jury on a question of good or bad faith upon the part of the agents of the company in that respect.

For the errors indicated, we are of the opinion that the judgment ought to be reversed and the cause remanded.

BONNER, ASSOCIATE JUSTICE.— Upon the question as to the proper party upon whom notice should be served, to be effective as a stoppage *in transitu*, the following is the general rule: "In order to make the notice effectual, it must be given either to the person who has the immediate custody of the goods, or to the principal whose servant has such custody, at such time and under such circumstances that he may, with reasonable diligence, prevent the delivery of the goods to the purchaser or consignee." Edwards on Bailments (2d. ed.), 487; Chitty on Carriers (with American notes), 163; Whitehead *v.* Anderson, 9 M. & W., 533; Mottram *v.* Heyer, 5 Denio, 629; Bell *v.* Moss, 5 Whart., 189.

I have very serious doubt whether notice served, as in this case, on a mere local agent at the point of destination, is effective as such, unless the goods should come into his possession in the regular line of transportation, either as originally consigned, or should thus come when the bill of lading has been fraudulently changed, and of which fraud the agent had either notice in fact, or of such circumstances as would be equivalent to notice. Otherwise the carrier might, without fault or negligence, be held responsible for the value of goods of which notice of stoppage *in transitu* had been given to one who had no power to interfere with or control their destination, and in regard to which the carrier, therefore, had no notice. The testimony in this case shows that the duties of the local agent to whom notice was given, "were confined to the business in and about the station only. That he had no control over anything except such as are under his immediate control."

The testimony, however, further shows — and it is upon this ground that I place my concurrence with the result reached, so far as the judgment against the company is concerned — that the goods, after they had been by the grossest fraud anticipated on the way, and the marks changed, and a new bill of lading taken in the name of a fictitious firm, subsequently came into the possession of this agent under such circumstances as that he himself testified that his suspicions were aroused that they were the same goods. Nevertheless, without notice to the agents of the company, and who were almost at the door of the station, and without taking a bond of indemnity, or other precaution whatever, to protect the rights of the consignors, he permitted the goods to be carried into the possession of the original consignees.        REVERSED AND REMANDED.

[Opinion adopted June 18, 1882, and motion for rehearing overruled during Tyler term, 1882.]