**Affirmed and Opinion filed April 4, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00115-CV

## DEANA POLLARD SACKS, Appellant

## V.

## BRIAN WEIL ZIMMERMAN AND ANDREW TODD MCKINNEY, IV, Appellees

**On Appeal from the 129th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2009-06612A**

## O P I N I O N

Appellant Deana Pollard Sacks challenges the trial court's summary judgments in favor of appellees Brian Weil Zimmerman and Andrew Todd McKinney, IV. Zimmerman and McKinney have served as counsel for the defendants in underlying litigation in which Sacks is suing numerous parties. The trial court entered a take-nothing judgment as to Sacks' invasion of privacy claims against Zimmerman and McKinney and severed those claims from the remainder

of the case. In five issues, Sacks asserts that the trial court erred by preventing her from conducting discovery, denying her motion for continuance of the summary-judgment hearing, hearing the summary-judgment motions instead of the special exceptions filed by Zimmerman and McKinney, granting summary judgment to Zimmerman and McKinney, and holding that Zimmerman and McKinney were immune from civil liability for intentional torts. We affirm.

## BACKGROUND

In October 2008, Sacks' membership from a local fitness club, Houstonian Campus, LLC (the "Houstonian"), was terminated. Thereafter, in early 2009, she sued the Houstonian, two named employees—Colleen Kennedy and Angelica Ximenez, and several unnamed employees, alleging they had been involved in perpetrating a scheme to terminate her membership (the "Houstonian suit"). McKinney was retained by the Houstonian and Kennedy to represent them and answered on their behalf in March 2009. Ximenez retained Zimmerman, who answered on her behalf in March 2009. Over the next two years, Sacks' claims in the Houstonian suit expanded to include other members of the Houstonian as defendants and additional allegations of invasion of privacy, defamation, conversion, violations of the deceptive trade practices act, assault by threat, and false imprisonment. Zimmerman and McKinney continued to represent the Houstonian, Kennedy, and Ximenez throughout the permutations of the lawsuit. In August 2011, Sacks filed a fifth amended petition in the Houstonian suit, adding invasion of privacy claims against Zimmerman and McKinney, alleging that they had obtained or used her medical records in violation of her privacy rights.

Specifically, Sacks asserted that

the conduct attributed to . . . Zimmerman and McKinney is limited to invasion of privacy related to their improper acquisition and/or use of

2

> confidential medical records and medical information . . . which was an independent tort and which was independent of the action an attorney would ordinary undertake on behalf of a client.

She alleged that Zimmerman and McKinney were engaging in "improper [litigation] conduct" by attempting to obtain her confidential medical records. She asserted that they had violated her privacy rights and that their behavior "implicate[d] the criminal provisions of the Health Insurance Portability and Accountability Act of 1996 ('HIPAA') and/or The Health Information Technology for Economic and Clinical Health Act ('HITECH') and/or other federal criminal provisions." She further alleged that, although their "legal" efforts to obtain a copy of her medical records had failed, they had already obtained an "illegal" copy of her these records from Greg Travis, an attorney representing a defendant in a different case brought by Sacks.

Both Zimmerman and McKinney answered, asserting the affirmative defense of the "litigation privilege" or qualified immunity. They each filed special exceptions and summary-judgment motions, asserting, as is relevant here, that they were qualifiedly immune from Sacks' suit against them because she was seeking to hold them liable for their litigation conduct in a pending suit. Sacks responded, arguing that "Texas law is clear that a plaintiff can sue opposing counsel for common law invasion of privacy arising from their misconduct in *circumventing proper judicial processes to obtain her privileged medical documents* because they knew that they were not properly discoverable in the underlying invasion of privacy and defamation lawsuit."

The trial court heard Zimmerman's and McKinney's special exceptions and summary-judgment motions on October 24, 2011. After hearing the argument of counsel, the trial court granted summary judgment in favor of Zimmerman and McKinney, ordering that Sacks take nothing and dismissing her claims against

3

them with prejudice.[1]  The summary judgment order was signed on November 14, 2011; that same day, the trial court signed an order severing the claims and causes of action by Sacks against Zimmerman and McKinney from the Houstonian suit, rendering the summary judgment order final and appealable.  Sacks filed a motion to reconsider combined with a motion to correct or reform the trial court's judgment, which was overruled by operation of law.  She timely appealed.

## ANALYSIS

Sacks presents five issues for review.  However, the dispositive issue before this court is whether, under the circumstances presented in this case, Zimmerman and McKinney were qualifiedly immune from suit.  Thus, we first address Sacks'

---

[1] The summary judgment order states,

> On this the 24th day of October, 2011 came on to be heard the following Motions:
>
> 1. Defendant Brian Zimmerman's First Amended Motion for Summary Judgment; Defendant Brian Zimmerman's Special Exceptions, Motion to Dismiss, and Motion for Sanctions; and
>
> 2. Defendant Andrew McKinne"'s Plea to the Jurisdiction, Special Exceptions, Alternative Motion for Summary Judgment and Motion to Sever[.]
>
> The Court, having considered the motions, all responses thereto, evidence presented by the parties, and arguments and authorities presented by all parties, finds as follows:
>
> Defendant Brian Zimmerman's First Amended Motion for Summary Judgment is GRANTED.
>
> Defendant Andrew McKinney's Motion for Summary Judgment is GRANTED.
>
> Plaintiff's objections to the affidavits of Messrs. Travis, Zimmerman and McKinney are overruled.  Defendant McKinney's objections to the affidavit of Mr. Sacks are likewise overruled.
>
> The other motions filed on behalf of Mr. Zimmerman and Mr. McKinney and presently before the Court are deemed moot based on the Court's ruling on the summary judgment motions.

fourth issue: whether the trial court erred in granting summary judgment in Zimmerman's and McKinney's favor.

## A. Standard of Review and Governing Law

Summary judgment is proper when all elements of an affirmative defense are established as a matter of law. *See Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997); *Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 435 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). In reviewing the trial court's summary judgment, we take all evidence favorable to Sacks as true and indulge every reasonable inference in her favor. *Id.* Where, as here, the trial court does not specify the grounds for its judgment, we may affirm if any of the grounds advanced within motion are meritorious. *See Chapman Children's Trust*, 32 S.W.3d at 435.[2]

Generally, an attorney has immunity from claims by an opposing party based upon conduct the attorney undertook in the representation of a client. *James*

[2] In Sacks' third issue, she asserts that the trial court erred in hearing Zimmerman's and McKinney's summary judgment motions rather than special exceptions. As noted above, the trial court actually heard the parties' special exceptions at the same hearing as it heard their summary-judgment motion. Sacks further claims that Zimmerman and McKinney evaded the protective features of special exceptions procedures. A party should not circumvent the protective features of the special exception procedure by urging a motion for summary judgment on the pleadings or by other means when a plaintiff's pleadings fail to state a claim. *Centennial Ins. Co. v. Commercial Union Ins. Cos.*, 803 S.W.2d 479, 482 (Tex. App.—Houston [14th Dist.] 1991, no writ). When, however, a defendant argues and presents summary-judgment proof establishing that the plaintiff has no viable claim, summary judgment is not on the pleadings, and the law requires neither special exceptions nor a remand so that the appellant may replead. *See Huffine v. Tomball Hosp. Auth.*, 979 S.W.2d 795, 802 (Tex. App.—Houston [14th Dist.] 1998, no pet.). With regard to Sacks' invasion-of-privacy claim, Zimmerman and McKinney asserted their affirmative defense of qualified immunity, *i.e.*, the litigation privilege. As in *Huffine*, summary judgment was not on the pleadings; it was based on an affirmative defense that established that Sacks had no viable claim. *Cf. id.* (holding, affirming summary judgment, that when a hospital established that appellant had no viable claims in its summary-judgment motion, neither special exceptions nor a remand for repleading were required). Thus, the trial court correctly granted their summary-judgment motions without providing Sacks with the opportunity to replead. Accordingly, we overrule her third issue.

*v. Easton*, 368 S.W.3d 799, 802 (Tex. App.—Houston [14th Dist.] 2012, no pet.). However, this "litigation immunity" does not apply to alleged torts based on the attorney's fraudulent or malicious conduct. *Id.*; *see also Poole v. Houston & T.C. Ry.*, 58 Tex. 134, 137 (1882) (holding that attorneys acting on behalf of their clients are not shielded from liability for their fraudulent conduct because fraudulent acts are "entirely foreign to the duties of an attorney"); *Toles v. Toles*, 113 S.W.3d 899, 911–12 (Tex. App.—Dallas 2003, no pet.) (holding that attorney who represented former husband in divorce action was not immune from claim of former wife alleging attorney aided and abetted a breach of fiduciary duty by the receiver in the underlying litigation); *Querner v. Rindfuss*, 966 S.W.2d 661, 666–70 (Tex. App.—San Antonio 1998, pet. denied) (determining attorney in probate litigation was not immune from liability for alleged conspiracy to engage in fraud)*; Likover v. Sunflower Terrace II, Ltd.*, 696 S.W.2d 468, 472 (Tex. App.—Houston [1st Dist.] 1985, no writ) (holding that attorney may be liable to opposing party in a transaction for conspiracy to defraud the opposing party because attorney immunity does not apply to attorney's allegedly fraudulent or malicious conduct); *Lackshin v. Spofford*, No. 14–03–00977–CV, 2004 WL 1965636, at *3 (Tex. App.—Houston [14th Dist.] Sept. 7, 2004, pet. denied) (mem. op.). (noting that, though attorneys owe no general negligence duty to opposing parties, they may be subject to liability to nonclients, including opposing parties, based on their fraudulent or malicious conduct, even if the attorneys' conduct was in the course of representing their client).

## B.    Application

Sacks alleged that Zimmerman and McKinney committed the intentional tort of invasion of privacy. We thus consider whether Sacks' allegations of invasion of privacy fall into the class of torts recognized by Texas involving fraudulent or

malicious conduct so as to preclude Zimmerman and McKinney from litigation immunity. We conclude that that her claims do not.[3]

According to Sacks' summary-judgment response, the behavior about which Sacks complains is the following. Zimmerman and McKinney were friends with an attorney, Greg Travis, who represented a dentist against whom Sacks had filed a medical malpractice suit before the suit Sacks filed against the Houstonian. The attorneys who represented Sacks in that lawsuit, David Sacks and Chris DiFerrante,[4] had lunch with Travis in mid-July 2009. At this lunch meeting, Travis stated to Sacks' attorneys that he was friends with Zimmerman and McKinney and that he had discussed the cases with them, *i.e.*, the Houstonian case and the dental malpractice case. Sacks alleges that Zimmerman and McKinney traded litigation documents with Travis. Sacks asserts in her summary-judgment response that, in August 2009, Zimmerman and McKinney began to seek access to Sacks' medical records, and, later, her dental records. She asserts that the only inference that can be drawn from this behavior is that Travis, who had access to her medical records, provided them to Zimmerman and McKinney.

According to David Sacks, who filed an affidavit with Sacks' summary-judgment response, Travis produced documents in discovery in the dental malpractice case that included documents from the case against the Houstonian. In this affidavit, he states that these documents "appear" to be from Zimmerman's litigation files, although all of them were available from other sources, including either the Harris County District Clerk's office or Mr. Sacks himself. He further

---

[3] In her summary-judgment response, Sacks also alleged that Zimmerman and McKinney "conspired" to invade her privacy. However, conspiracy is a derivative claim. If summary judgment was appropriate on her invasion of privacy claim, then it was likewise appropriate on this derivative claim. *See Trinh v. Lang Van Bui*, No. 14-11-00442-CV, 2012 WL 5378112, at *9 (Tex. App.—Houston [14th Dist.] Nov. 1, 2012, pet. filed) (mem. op.).

[4] David Sacks is Sacks' husband.

7

states that Travis produced an affidavit from Colleen Kennedy, which was part of the Houstonian's response in a Rule 202 proceeding that was initially publicly filed, but then ordered sealed by the trial court. David Sacks asserts in his affidavit that "it is *likely* that the Kennedy affidavit came from Mr. McKinney but it *could have come* from Mr. Zimmerman through Mr. McKinney." (emphasis added). Mr. Sacks concludes his affidavit as follows: "It *appears* that Messrs. Travis, Zimmerman, and McKinney had been sharing information back and forth among the three cases, including the Rule 202 proceeding [between the Sacks family and the Houstonian] that was sealed by order of the 129th Judicial District Court." (emphasis added).

Much of Sacks' support for her invasion of privacy complaint arises from statements made by Zimmerman in motions to compel and hearings on these motions to compel in which he sought to have Sacks completely respond to the following interrogatories:[5]

> INTERROGATORY NO. 11:
>
> Please state whether you were taking any medication, whether over the counter or prescription, within the year preceding the incident made that [sic] of this lawsuit. If so, please describe with particularity the medication, the dosage, who prescribed the medication, where such prescription was filled and the dates on which the medication was consumed and the dates of purchase.
>
> RESPONSE:
>
>     Plaintiff objects that this request is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

---

[5] McKinney did not file these motions or propound these interrogatories. However, at an October 19, 2009 hearing on a motion in which Zimmerman stated that he was seeking Sacks' dental records on behalf of his client, McKinney proposed that the trial court review the records under a "protective order" to determine if there is something that may be relevant to the Houstonian case. Thus, Sacks asserts that McKinney "joined" in Zimmerman's attempt to illegally obtain her medical records and "invade her privacy."

Plaintiff further objects that this request is over broad, burdensome, harassing and is merely a fishing expedition.

INTERROGATORY NO. 12:

Please identify by name and address all physicians, psychiatrists, and/[o]r psychologists whom you have seen in the preceding ten (10) [years] and . . . the reason for your having seen that provider.

RESPONSE:

Plaintiff objects that this request is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects that this request is over broad, burdensome, harassing and is merely a fishing expedition.

As is clear from David Sacks' affidavit and Sacks' summary-judgment response, all of the conduct about which she complains is behavior that Zimmerman and McKinney allegedly undertook as part of their discovery in the Houstonian case.

Courts have consistently held that attorneys should not be liable for statements made or actions taken in the course of representing their clients, because they would then be forced to balance their own potential exposure against their clients' best interests. *See, e.g.*, *Toles*, 113 S.W.3d at 910; *see also Chapman Children's Trust*, 32 S.W.3d at 440, 442 ("The conduct complained of here, unlike the role played by the lawyer in *Likeover* [in which an attorney had assisted his client in perpetrating a fraud], involves acts or omissions undertaken as part of the discharge of Porter & Hedges's duties as counsel to an opposing party."); *White v. Bayless*, 32 S.W.3d 271, 275–76 (Tex. App.—San Antonio 2000, pet. denied) (stating that, under Texas law, attorneys are not liable for wrongful litigation conduct because doing so would "dilute the vigor" with which they represent their clients and would not "be in the best interests of justice"); *Bradt v. West*, 892 S.W.2d 56, 71–72 (holding that because an attorney is charged with the duty of zealously representing clients within the bounds of the law, in fulfilling that duty the attorney may "interpose any defense or supposed defense and make use of any

right in behalf of such client or clients as [the attorney] deem[s] proper and necessary, without making himself subject to liability in damages"). This rule is vital to our adversarial system of justice. *See Toles*, 113 S.W.3d at 910; *Chapman Children's Trust*, 32 S.W.3d at 440; *Bradt*, 892 S.W.2d at 71.

Sacks has not identified any conduct that is fraudulent or "entirely foreign to the duties of an attorney." *See Poole*, 48 Tex. at 137–38. Rather, she relies on statements made in motions and hearings on these motions. She admits in her summary-judgment response that an attorney cannot be liable to an opposing party "for filing motions, even if that filing is frivolous or without merit, because making motions is conduct an attorney engages in as part of the discharge of his duties. . . ." (citation and internal quotations omitted). Moreover, an invasion-of-privacy claim is not one of the recognized types of behavior that falls into the category of fraudulent or malicious conduct identified by courts of this state. *Cf. Toles*, 113 S.W.3d at 912 (expressly holding that an invasion of privacy claim is not a legally cognizable claim as against opposing counsel); *see also Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405–06 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (discussing qualified immunity and noting that it generally applies even if conduct is "wrongful in the context of the underlying lawsuit"). Indeed, the conduct about which Sacks complains is the type of conduct in which attorneys routinely engage when zealously defending their clients: they conduct discovery to assist in representing their clients in pending litigation, often hiring investigators to inquire into many aspects of an adversary's life. *Cf. Alpert*, 178 S.W.3d at 406 (noting that an attorney's actions, even if "frivolous or without merit," are not independently actionable if the conduct is part of the discharge of the lawyer's duties in representing his client).

10

We in no way condone the acquiring of any person's private medical records through illegitimate means. But there is simply no evidence of such an acquisition's having occurred here—rather there is mere speculation on Sacks' part based largely on statements made by Zimmerman and McKinney. These statements were made in discovery motions and hearings in which Zimmerman sought to compel Sacks to answer previously filed discovery requests. These discovery requests concerned Sacks' state of mind at the time of the incident that led to the termination of her membership at the Houstonian—the incident that initiated the Houstonian suit. All of the statements Zimmerman and McKinney made upon which Sacks relies to support her invasion of privacy claim were made as part of the discovery process.[6] In other words, Zimmerman and McKinney made these statements and filed these motions while they were discharging their

---

[6] Texas Rule of Civil Procedure 166a expressly forbids the taking of oral testimony at a summary-judgment proceeding. Tex. R. Civ. P. 166a(c) ("No oral testimony shall be received at the hearing."). Accordingly, there is no need to create a record of any hearing. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979). However, here, we have a record from the summary-judgment hearing. As there are many issues in the underlying Houstonian suit about which we are unfamiliar, it was instructive to review the record from this hearing. The trial court is necessarily more familiar with the proceedings in the underlying Houstonian suit than are we.

At this hearing, the trial judge recalled that one of the numerous complaints filed by a member against Sacks that led to the termination of her Houstonian membership—and the initiation of her suit against the Houston and the various other defendants—arguably could have triggered Zimmerman's interest in Sacks' medical records. During the hearing, the trial judge further expressed the following concern regarding a lawyer's investigation of a legitimate defensive issue:

> But we're talking about whether or not you have a cognizable cause of action in the State of Texas, where someone is doing an investigation on behalf of what is a relevant defense in this case, and asked questions and they get answers, but they may or may not have supposed to have been given that information, and whether or not you can file suit on that, on those, on that kind of fact scenario and say that they invaded my client's privacy.

11

duties in representing their clients.[7]  Sacks was not ordered to produce her medical records in this case.  If she had any evidence that opposing counsel were abusing the discovery process, discovery sanctions would be available to her.  *See* Tex. R. Civ. P. 215.3; *see also Bradt*, 892 S.W.2d at 72 (noting that the law provides the court the authority to punish an attorney's wrongful conduct in the discharge of his duties, citing Tex. R. Civ. P. 13 (power to punish attorneys for filing improper pleadings, motions, and "other papers"), Tex. R. Civ. P. 215 (power to punish attorney for abusing discovery), and Tex. Gov't Code § 21.002 (power to punish attorney for contempt of court)).

We conclude that the trial court properly granted summary judgment to Zimmerman and McKinney based on qualified immunity.  Because summary judgment was appropriate, we overrule Sacks' fourth issue.

## CONCLUSION

Zimmerman and McKinney established their affirmative defense of qualified immunity to Sacks' claims.  Accordingly, the trial court did not err in granting summary judgment in their favor, and we have overruled her third and fourth issues.  Moreover, our determination of these issues makes it unnecessary to

---

[7] Sacks asserts that Zimmerman and McKinney engaged in unlawful conduct, "Zimmerman and McKinney ask the court to . . . immunize their illegal procurement of Professor Sacks's medical records outside of legitimate judicial processes."  But, as noted above, the record establishes that Zimmerman attempted to obtain Sacks' medical records through the discovery process.  And Sacks notes in a footnote in her brief (and in a similar footnote in her summary-judgment response) that "the Texas litigation privilege and other states' similar privileges are consistent with HIPAA insofar as only formal discovery requests satisfy the requirements for disclosing personal medi[c]al information."

address her other issues.[8]  Therefore, without addressing her remaining issues, we affirm the trial court's judgment.


                                    /s/     Adele Hedges
                                            Chief Justice


Panel consists of Chief Justice Hedges and Justices Boyce and Donovan.

---

[8] *See* Tex. R. App. P. 44.1 (stating that no judgment may be reversed on the ground that the trial court made an error of law unless the court of appeals concludes that the error properly caused the rendition of an improper judgment or probably prevented the appellant from properly presenting her case to the court of appeals); Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").