**Opinion issued May 28, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00985-CV

———————————

## JAL B. GUZDER, Appellant

## V.

## HAYNES AND BOONE, LLP, SARAH TEACHOUT, AND PAUL SEARLES, Appellees

On Appeal from the 113th District Court
Harris County, Texas
Trial Court Case No. 2013-31165A

## MEMORANDUM OPINION

Appellant, Jal B. Guzder, challenges the trial court's order dismissing his fraud and civil-conspiracy claims against appellees, Haynes and Boone, LLP, Sarah Teachout, and Paul Searles (collectively, "Haynes and Boone"). In three

issues, Guzder contends that the trial court erred in granting Haynes and Boone's motion to dismiss his claims and awarding it attorney's fees.[1]

We affirm.

## Background

In his petition, Guzder, a chemical engineer, alleges that in 1997, he entered into a consulting relationship with Kodi G. Irani ("Irani"), the "sole owner" of MKM Engineers, Inc. ("MKM"), an environmental remediation company. Guzder became a director of MKM and its executive vice president, and he generated "millions of dollars" in business for MKM.

In 2001, "a dispute arose between Irani and Guzder that resulted in a lawsuit," and Haynes and Boone represented Irani and MKM in that lawsuit. The parties settled the lawsuit, and, pursuant to their settlement agreement, Guzder resigned his positions at MKM and returned to being a consultant. Also, under a separate agreement with MKM, it was to pay Guzder a portion of its profits.

Guzder further alleges that after MKM did not pay him as promised, he sued Irani and MKM, among others, in a Fort Bend County district court.[2] He also filed in a United States District Court a qui tam action[3] against Irani and MKM "for

---

[1] *See* TEX. R. CIV. P. 91a.

[2] *EETCO, et al. v MKM Eng'rs, Inc., et al.*, No. 01-CV-155803 (434th Dist. Ct., Fort Bend Cnty., Tex.).

[3] *Jal B. Guzder v. MKM Eng'rs, Inc.*, No. H-05-895 (S.D. Tex.).

2

defrauding the government in connection with their participation" in a program under the Small Business Act.[4] "After years of litigation and several mediations and conferences," MKM "agreed to pay [Guzder] a portion of the funds he was owed under the terms of his consulting agreement."

On May 27, 2011, Haynes and Boone, on behalf of MKM, sent Guzder a written "Rule 11 Settlement Agreement" (the "Agreement"), under which MKM "agreed to pay Guzder $1.7 million in exchange for his releases and dismissals of the pending lawsuits."[5] Guzder asserts that Haynes and Boone "knew at the time that the [Agreement] was conveyed to [him] that their clients had no intention of paying [him] the money offered in the [Agreement] without the inclusion of terms not contained in the [Agreement]." And he "accepted" MKM's settlement offer by "countersigning" the Agreement and returning it to Haynes and Boone.

"Within days" of executing the Agreement, Guzder's counsel sent to Haynes and Boone drafts of the motions to dismiss his Fort Bend County and United States District Court lawsuits. And Haynes and Boone "made no indication that the [Agreement] was not a binding agreement and that [he] and [his] counsel should

---

[4]     15 U.S.C. § 637 (2012).

[5]     The parties dispute whether this document actually constituted a final settlement agreement or was simply a letter proposing settlement of certain terms. They are currently litigating this issue in a separate lawsuit. *MKM Eng'rs, Inc. v. Guzder*, No. 2008-17570 (127th Dist. Ct., Harris Cnty., Tex.), No. 14-14-00077-CV (Tex. App.—Houston [14th Dist.], filed Jan. 21, 2014). The Agreement is not in the record before us.

3

not rely upon it."  Rather, Haynes and Boone "affirmed the settlement," filing a joint motion to dismiss the qui tam lawsuit and advising the United States District Court that they had reached a settlement.  Guzder asserts that on the day after the federal court dismissed his qui tam lawsuit, Haynes and Boone sent him an email "feigning confusion as to why the Lawsuit had been dismissed, and suggesting that the [Agreement] was merely 'an agreement to agree.'"  He further alleges that "Haynes and Boone, Teachout, and Searles all had independent duties to the Federal Court to be truthful and accurate in factual statements made" and "each breached those duties by making admittedly false representations to the Federal Court about the existence of a settlement amongst the parties."

Guzder then sued Haynes and Boone and others for breach of contract, and the trial court granted summary judgment in his favor.[6]  Guzder also filed the instant lawsuit, alleging that Haynes and Boone had committed fraud and civil conspiracy to commit fraud.

As to his fraud claim, Guzder alleges as follows:

46.    Each and every one of [Haynes and Boone's] representations [to him], described above, concerned material facts without which [he] would not have acted and which [Haynes and Boone] knew were false or made recklessly without any knowledge of their truth as a positive assertion.  Specifically, [Haynes and Boone] and [he] engaged in settlement discussions over a period of days, negotiating the terms that ultimately formed the [Agreement] that was signed on May 27, 2011.  [Haynes and Boone] thereafter represented to the

---

[6]    *See MKM Eng'rs, Inc. v. Guzder*, No. 14-14-00077-CV.

4

Federal Court that the case had settled, participated in seeking an abatement due to settlement, and participated in seeking a dismissal due to settlement.

47. [Haynes and Boone's] representations to [him] of a settlement were false statements of fact because [Haynes and Boone] never intended the [Agreement] to be binding or to resolve the disputes amongst them, which they have since admitted.

48. [Haynes and Boone] made the false representations of settlement knowing they were false because they never intended to honor the terms of the agreement that they drafted and submitted to [him] for acceptance.

49. [Haynes and Boone] made the false representations with the intent that [he] would rely on the false representations by moving forward with the dismissal of the Qui Tam Lawsuit. Indeed, [Haynes and Boone] even represented to the Federal Court that the Qui Tam Lawsuit settled. And, [Haynes and Boone] remained silent when the parties sought and obtained the dismissal of the Qui Tam Lawsuit while knowing that they did not believe the parties had a settlement.

50. [He] relied on [Haynes and Boone's] false representations when he sought and obtained the government's consent to dismiss the Qui Tam Lawsuit. In seeking the dismissal, [he] was injured. That injury was exacerbated when the Qui Tam Lawsuit was actually dismissed, again, as a direct result of [Haynes and Boone's] false statement.

As to his civil-conspiracy claim, Guzder alleges as follows:

51. [Haynes and Boone] formed an agreement [with MKM and Irani] to cause [him] to enter into [the Agreement], which on its face contains all the terms necessary to create a binding and enforceable agreement, but all the while intended not to perform under the same. Instead, they used the [Agreement] to cause [him] to dismiss his causes of action, damage his Qui Tam Lawsuit by seeking consent to dismiss from the government, and prejudice his ability to prosecute any of his very real claims against Irani. They accomplished this goal through a series of misrepresentations to both [him] and the courts, and in so doing proximately caused [him] injury.

Haynes and Boone moved to dismiss[7] Guzder's fraud and civil-conspiracy claims on the ground that they have "no basis in law," asserting that in the spring of 2011, the parties had attempted to negotiate a global settlement of all claims. On May 27, 2011, they signed a letter, which Guzder refers to as a "Rule 11 Settlement Agreement," outlining "some of the terms of a proposed settlement." The "letter itself specifically contemplated the execution of a final settlement agreement" and numerous future actions. Also, the parties filed a "Joint Notice of Settlement and Request for 30-Day Stay in the Qui Tam Litigation," asking the federal court to temporarily stay the case "as the parties worked towards consummating the settlement." Haynes and Boone further asserted that Guzder's allegations are not true. And, even taking them as true, "which is required at this stage, the allegations unequivocally arise out of actions taken by [Haynes and Boone] in the course of representing and discharging [its] duties to Irani and MKM in this litigation." Thus, "under well-established Texas law, Guzder's claims fail as a matter of law."

In response, Guzder asserted that "a cause of action against an attorney for fraud does exist in Texas," and, here, "[a]t no time did [Haynes and Boone] represent or disclose that the [Agreement] was anything other than a Rule 11 Agreement or that [he] was acting at his own peril by accepting it as a Rule 11

---

[7] *See* TEX. R. CIV. P. 91a.

6

Agreement." And Haynes and Boone later "took the position that the [Agreement] was not a binding agreement, but rather an 'agreement to agree.'" In representing the Agreement "as binding when it was not meant to be," Haynes and Boone "went beyond the protected class of litigation behaviors."

In its reply, Haynes and Boone explained that "a claim against an attorney may be actionable if it arises out of conduct *outside of litigation*." However, "Texas law is clear" that "a party does not have an independent right of recovery, under any cause of action, against the attorney of an opposing party arising from the conduct the attorney engaged in as part of the discharge of his duties in representing an opposing party in a lawsuit." And, here, Guzder did not dispute that his allegations against Haynes and Boone arose out of conduct that occurred within its representation of their clients in litigation.

The trial court granted Haynes and Boone's motion, dismissed the case, and awarded it attorney's fees in the amount of $4,500. It then severed Guzder's fraud and civil-conspiracy claims against Haynes and Boone into a separate case, making its judgment final.

### Standard of Review

Texas Rule of Civil Procedure 91a.1, which became effective March 1, 2013, provides, in pertinent part, as follows:

> [A] party may move to dismiss a cause of action on the grounds that it has no basis in law or fact. A cause of action has no basis in law if the

allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought.  A cause of action has no basis in fact if no reasonable person could believe the facts pleaded.

TEX. R. CIV. P. 91a.1.

"[W]hether a cause of action has any basis in law and in fact are legal questions that we review de novo, based on the allegations of the live petition and any attachments thereto."  *Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. filed) (analyzing applicable standard of review in appeal from dismissal under Rule 91a.1); *see also GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752, 754 (Tex. App.—Beaumont 2014, pet. denied) (applying de novo standard of review to dismissal under rule 91a.1 and noting it is analogous to Federal Rule of Civil Procedure 12(b)(6)); *Dailey v. Thorpe*, 445 S.W.3d 785, 788 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (same).  We construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations in the pleadings to determine whether the cause of action has a basis in law or fact. *Wooley*, 447 S.W.3d at 76.

## Dismissal

In his first and second issues, Guzder argues that the trial court erred in dismissing his fraud and civil-conspiracy claims as having "no basis in law" because his claims "are cognizable under Texas law" and fall "within the exception to qualified immunity for fraud and conspiracy."

8

Texas law authorizes attorneys to "practice their profession, to advise their clients, and to interpose any defense or supposed defense, without making themselves liable for damages." *Kruegel v. Murphy*, 126 S.W. 343, 345 (Tex. Civ. App.—Dallas 1910, writ ref'd). This well-established rule allows attorneys to fulfill their duty to zealously represent their clients without subjecting themselves to the threat of liability. *Bradt v. West*, 892 S.W.2d 56, 71 (Tex. App.—Houston [1st Dist.] 1994, writ denied). Subjecting attorneys to liability for statements made or actions taken in the course of representing their clients would force attorneys to constantly balance their own potential exposure against their client's best interests. *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

In light of these principles, courts have held that "an attorney's conduct is not independently actionable by an opposing party to the suit if the conduct is part of the discharge of the lawyer's duties in representing his or her client." *Id.* at 406. Generally, this "qualified immunity" applies even if the attorney's conduct is wrongful in the context of the underlying lawsuit. *Id.* (citing *Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 288 (Tex. App.—Fort Worth 1997, writ denied) ("Under Texas law, attorneys cannot be held liable for wrongful litigation conduct.")).

"To determine whether immunity attaches, courts focus on the type or kind of conduct in which the attorney is engaged to determine whether the conduct is

9

actionable or merely conduct undertaken in the representation of the client." *Gaia Envt'l, Inc. v. Galbraith*, 451 S.W.3d 398, 403 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "An attorney cannot be held liable to a third party for conduct that requires 'the office, professional training, skill, and authority of an attorney.'" *Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01-06-00696-CV, 2008 WL 746548, at *7 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, pet. denied) (mem. op.) (quoting *Miller v. Stonehenge/Fasa–Texas, JDC, L.P.*, 993 F. Supp. 461, 464 (N.D. Tex. 1998)). "Incorrect, meritless, and even frivolous conduct is not actionable if it satisfies this standard." *Id.*

For instance, "a third party has no independent right of recovery against an attorney for filing motions in a lawsuit, even if frivolous or without merit, although such conduct [may be] sanctionable or contemptible as enforced by the statutory and inherent powers of the court." *Alpert*, 178 S.W.3d at 406; *see also Bradt*, 892 S.W.2d at 71–72 (holding "an attorney does not have a right of recovery, under any cause of action," against another attorney for conduct taking place during litigation). Courts have refused to acknowledge an independent cause of action in such instances because "making motions is conduct an attorney engages in as part of the discharge of his duties in representing a party in a lawsuit." *Alpert*, 178 S.W.3d at 406.

10

Under this same reasoning, an attorney "may not be held liable for . . . fraud merely for making representations to the opposing party in litigation that further the best interests of his own client." *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 378 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). For instance, in *Authorlee v. Tuboscope Vetco International, Inc.*, the plaintiffs sued the defendant's attorneys for fraud and civil conspiracy, asserting that they had "knowingly agreed to insert false statements" into settlement documents to conceal the existence of an aggregate settlement. 274 S.W.3d 111, 119 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). The trial court held that "there can be no conspiracy to commit fraud in the litigation setting." *Id.* at 120. This Court agreed, noting that "it is the type of conduct in which the attorney engages, and not whether it was meritorious in the underlying lawsuit, that governs a party's right to recovery against an adversary's former attorney." *Id.* And we held that all of the complained-of actions by the attorneys "were in connection with the settlement of a lawsuit" and "no private cause of action" exists for litigation conduct. *Id.*

Similarly, in *Chapman Children's Trust v. Porter & Hedges, L.L.P.*, the plaintiffs, who had intervened in the underlying lawsuit, alleged that an opposing party's law firm had committed fraud and civil conspiracy in its handling of a settlement. 32 S.W.3d 429, 441, 443 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). The plaintiffs alleged that the law firm had concealed information related

11

to the settlement, "despite the fact that it knew [its client] had other creditors attempting to seize" the proceeds; made improper deductions; accused the plaintiffs of fraud; and "did nothing to assist" the plaintiffs, even though it "knew that [its client] had told the [plaintiffs] that they would 'never see "one dime" of the net proceeds unless they agreed to reduce their interest in the net proceeds.'" *Id.* at 441. The Fourteenth Court of Appeals, after noting that it was required to focus on the type of conduct in which the attorneys had engaged rather than on whether the conduct was meritorious in the context of the underlying lawsuit, concluded that the plaintiff's allegations did no more than demonstrate that the attorneys had attempted to negotiate a smaller settlement on their clients' behalf. *Id.* at 442.

Also, in *Sacks v. Hall*, a plaintiff sued her dentist's attorney for improper litigation conduct in her malpractice action against the dentist. No. 01-13-00531-CV, 2014 WL 6602460, at *1 (Tex. App.—Houston [1st Dist.] Nov. 20, 2014, no pet.) (mem. op.). The plaintiff asserted that the attorney had obtained her dental records in violation of her privacy rights and federal law. *Id.* at *2. And he had acted with malice in filing the records in the trial court, knowing that they contained an erroneous entry indicating that she had abused prescription medications and knowing that her dentist had later corrected the entry. *Id.* She further asserted that the attorney had disclosed the erroneous version of her records

12

to other attorneys to give them an advantage in another lawsuit. *Id.* In his defense, the attorney asserted the attorney-immunity doctrine, and the trial court granted him summary judgment. *Id.*

On appeal in *Sacks*, this Court concluded that the filing of the dental records was the kind of conduct in which attorneys engage in discharging their duties to their clients and did not constitute an action "foreign to the duties of an attorney." *Id.* at *13. We noted that "[w]hether the substance of the records was incorrect [did] not change the kind of conduct in which [the attorney] engaged." *Id.* We also explained that the attorney was "entitled to advance his client's position pursuant to the rules of evidence and to pursue his trial strategy without fear of personal liability." *Id.* (citing *Renfroe*, 947 S.W.2d at 288 (holding no cause of action against attorney for his participation in filing writ of garnishment with inaccurate facts); *McCampbell v. KPMG Peat Marwick*, 982 F. Supp. 445, 448 (N.D. Tex. 1997) (holding plaintiff could not recover against attorney representing opposing party in previous suit based on attorney's allegedly false statements in affidavit and new-trial motion)). And we held that the attorney was, as a matter of law, not liable for the alleged conduct. *Id.* at *15.

Further, in *Jurek v. Kivell*, a father and daughter executed a mediated settlement agreement ("MSA"), in which the father promised that certain real estate would be conveyed to her upon his death. No. 01-10-00040-CV, 2011 WL

13

1587375, at \*1 (Tex. App.—Houston [1st Dist.] Apr. 21, 2011, no pet.) (mem. op.). The father was represented in the mediation by his attorney, Kivell. *Id.* After the father died, the daughter learned that a year before the mediation, Kivell had prepared the father's will, in which he left his estate to the daughter's siblings. *Id.* The daughter sued the attorney, alleging that he had defrauded her into signing the MSA by failing to disclose the existence or contents of the will. *Id.* She further asserted that, because Kivell had prepared the will, he knew at the time that her father had executed the MSA that his promise was false. *Id.* at \*2.

In affirming the trial court's summary judgment in favor of the attorney, we noted that the plaintiff had not argued that the attorney had failed to disclose any information to her independent of his participation in the mediation of the lawsuit. *Id.* at \*6. And we explained that "a party does not have an independent right of recovery 'under any cause of action' against the attorney of an opposing party arising from conduct the attorney engaged in as part of the discharge of his duties in representing" his client. *Id.*

Finally, we note that in *Dixon Financial Services, Ltd. v. Greenberg, Peden, Siegmyer & Oshman*, the plaintiffs sued a law firm for fraud and civil conspiracy, alleging that the firm had intentionally misrepresented the scope of an arbitration award in order to obtain all of the stock held, when in fact the attorneys knew that only a part of the stock was subject to the award. 2008 WL 746548, at \*8. The

14

attorneys filed a petition to obtain a temporary restraining order to secure the arbitration award. *Id.* We noted that the signing and filing of an application for a temporary restraining order to aid in the recovery of monies owed to a client under an arbitration award is not conduct "foreign to the duties of an attorney." *Id.* And "[w]hether the substance of the communications was incorrect or overstated [did] not change the kind of conduct in which [the attorney had] engaged." *Id.* at *9. We explained that "[c]haracterizing an attorney's action in advancing his client's rights as fraudulent does not change the rule that an attorney cannot be held liable for discharging his duties to his client." *Id.* And we held that "[a] plaintiff . . . should not be able to 'salvage an otherwise untenable claim merely by characterizing it as tortious.'" *Id.* If an attorney's conduct violates his professional responsibilities, the remedy is public, not private. *Id.*

However, the protections afforded an attorney from liability arising out of his representation of a client are not "boundless." *See McCamish, Martin, Brown & Loeffler v. Appling Interests*, 991 S.W.2d 787, 794 (Tex. 1999). "An attorney who personally steals goods or tells lies on a client's behalf may be liable for conversion or fraud in some cases." *Chu v. Hong*, 249 S.W.3d 441, 446 & n.19 (Tex. 2008). Thus, a cause of action may exist against an attorney who knowingly commits a fraudulent act outside the scope of his legal representation of his client. *See Alpert*, 178 S.W.3d at 406. If the attorney participates independently in

15

fraudulent activities, his action is "foreign to the duties of an attorney," and he cannot "shield his own willful and premeditated fraudulent actions from liability simply on the ground that he is an agent of his client." *Id.*

For example, in *Likover v. Sunflower Terrace II, Ltd.*, an attorney and his clients joined together in a scheme to exact money, to which they were not legally entitled, from the plaintiffs. 696 S.W.2d 468, 474 (Tex. App.—Houston [1st Dist.] 1985, no writ). There, the plaintiffs purchased an apartment complex from the defendants and paid them for architectural services and rehabilitation of the property. *Id.* at 469–70. However, the parties did not execute a contract for rehabilitation, and the defendants, who were not licensed architects, did not prepare plans or blueprints. *Id.* at 470. On the advice of the attorney, the defendants then refused to sign the deed to the apartment complex as promised, unless the plaintiffs paid them an additional $400,000. *Id.* at 471. On appeal, the attorney asserted that he "merely gave legal advice to a client." *Id.* at 474. This Court held, however, that "an attorney is liable if he knowingly commits a fraudulent act that injures a third person, or if he knowingly enters into a conspiracy to defraud a third person." *Id.* at 472 (citing *Poole v. Hous. & T.C. Ry.*, 58 Tex. 134, 137 (1882)).

In *Poole*, a railroad station agent was notified to stop a carload of goods in transit to an insolvent buyer. 58 Tex. at 137. The buyer, after learning that the

16

shipment was to be stopped, procured his attorney to intercept the goods at an intermediate station, obtain possession of the goods, and re-mark them with a fictitious name. *Id.* The goods then passed from the hands of the company into the hands of the insolvent. *Id.* The Court held that the attorney,

> [h]aving assumed the apparent ownership of the goods, for the purpose and with the intention of consummating the fraud upon [the plaintiff], he will not be heard to deny his liability to [the plaintiff] for the loss sustained by reason of his wrongful acts, under the privileges of an attorney at law, for such acts are entirely foreign to the duties of an attorney; neither will he be permitted, under such circumstances, to shield himself from liability on the ground that he was the agent of the [defendant], for no one is justified on that ground in knowingly committing willful and premeditated frauds for another.

*Id.* at 137–38. Similarly, in *Essex Crane*, this Court held that "[a]ttorneys have no immunity from knowingly drafting fraudulent documents to evade the lawful seizure of property by a judgment creditor." 371 S.W.3d at 378–79.

Also, in *JJJJ Walker, LLC v. Yollick*, the Fourteenth Court of Appeals held that "an attorney can be held liable for his own fraudulent conduct even though it was performed on a client's behalf." 447 S.W.3d 453, 468 (Tex. App.—Houston [14th Dist.] 2014, pet. filed). In *Yollick*, after a hospital system filed for bankruptcy relief, a group of investors sought to purchase its assets, namely, three hospitals, from the creditor bank. *Id.* at 455. The bank's attorney, Yollick, negotiated with the investors, created a company to hold the assets, and provided the purchase money and funds for initial working capital. *Id.* at 455–56. When the

17

investors needed additional working capital, they executed a letter agreement, assigning their membership interests in the company that was holding the hospitals to a new entity under the bank's control. *Id.* at 456. Yollick then appointed his wife, using a fictitious name, and two of his friends to act as the board of directors of the new entity. *Id.* And he executed an elaborate scheme to take over the company that was holding the hospitals. *Id.* at 457. He removed each of the investors as officers and replaced them with himself as sole officer, manager, president, secretary, and chief executive officer. *Id.* He then sold the hospitals for $55 million and paid the investors nothing. *Id.* at 458.

In the investors' appeal from the trial court's judgment in favor of Yollick on their fraud claim, Yollick argued that he was entitled to immunity as a matter of law because an attorney is not liable for statements made in the course of representing his client in adversarial proceedings. *See id.* at 468–69. The Fourteenth Court explained that Yollick, in signing the letter agreement "as the Bank's agent," was "not relying on his professional knowledge and training as an attorney to make a statement in the course of representing his client in an adversarial context." *Id*. at 469–70. Rather, "he was simply signing his name, acting as the Bank's agent with actual authority to bind his principal to a promise of future performance." *Id.* at 70. And because he did so "knowing that the Bank did not intend to perform as promised, he can be held liable for his conduct just as

18

any other agent or corporate representative would be." *Id.* The court noted that Yollick was "not [to be] held to a lower standard" simply because he happened to also be the principal's attorney. *Id.*; *see also Galbraith*, 451 S.W.3d at 404 (noting "if a lawyer knowingly participates in fraudulent activities independent of the lawyer's representation of the client, the lawyer's actions are 'foreign to the duties of an attorney'").

Here, to determine whether Haynes and Boone has immunity from Guzder's claims, we "focus on the type or kind of conduct" in which, as alleged by Guzder, Haynes and Boone engaged to determine "whether the conduct is actionable or merely conduct undertaken in the representation of the client." *See Galbraith*, 451 S.W.3d at 403. We limit our analysis to the allegations in the live pleadings. *Wooley*, 447 S.W.3d at 81; *see* TEX. R. CIV. P. 91a.6. And we consider whether these allegations, "taken as true, together with inferences reasonably drawn from them" entitle Guzder to the relief sought. *See* TEX. R. CIV. P. 91a.1.

In his petition, Guzder alleges that Haynes and Boone committed fraud[8] by making "false representations of settlement"; not indicating that the Agreement

---

[8] The elements of a fraud claim are: (1) the defendant made a material representation that was false; (2) knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) intended to induce the plaintiff to act upon the representation; and (4) the plaintiff acted in reliance on the representation and thereby suffered injury. *See Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009). The elements of fraud by nondisclosure, or fraud by omission, are (1) the defendant failed to

19

"was not a binding agreement" and that he and his counsel "should not rely upon it"; acting with intent that Guzder rely on the "false representations" by moving forward with the dismissal of the qui tam lawsuit; representing to the federal court that "the case had settled"; and "participat[ing] in seeking" an abatement and dismissal due to settlement.

Construing the pleadings liberally in favor of Guzder and accepting as true his factual allegations, we conclude that engaging in such settlement negotiations and filing such motions in the court, including "seeking an abatement" and "participating in seeking a dismissal due to settlement," constitute acts taken and communications made to facilitate the rendition of legal services. The actions and communications thus fall within the context of Haynes and Boone's discharge of its duties to represent MKM. *See Alpert*, 178 S.W.3d at 408. Whether the substance of the communications was incorrect does not change the *kind* of conduct in which Haynes and Boone engaged. *See Authorlee*, 274 S.W.3d at 119–20 (holding "no private cause of action" against attorney for having "knowingly agreed to insert false statements" into settlement documents); *Chapman Children's*

---

disclose facts to the plaintiff when the defendant had a duty to disclose such facts; (2) the facts were material; (3) the defendant knew of the facts; (4) the defendant knew that the plaintiff was ignorant of the facts and did not have an equal opportunity to discover the truth; (5) the defendant was deliberately silent and failed to disclose the facts with the intent to induce the plaintiff to take some action; (6) the plaintiff relied on the omission; and (7) suffered injury as a result. *See Horizon Shipbuilding, Inc. v. Blyn II Holding, LLC*, 324 S.W.3d 840, 850 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

20

*Trust*, 32 S.W.3d at 441–42 (holding no cause of action where law firm, "knowing" its client did not intend to pay as agreed, "did nothing to assist" plaintiffs in settlement); *Jurek*, 2011 WL 1587375, at *6 (noting plaintiff did not assert attorney's failure to disclose any information to her independent of his participation in mediation of lawsuit and holding no independent right of recovery where attorney did not notify opposing party of existence of facts bearing on client's assertions in MSA); *Dixon Fin. Servs., Ltd.*, 2008 WL 746548, at *9 ("Characterizing an attorney's action in advancing his client's rights as fraudulent does not change the rule that an attorney cannot be held liable for discharging his duties to his client.").

The attorney conduct complained of here, unlike the complained-of conduct by the attorneys in *Likover*, *Poole*, *Essex Crane*, and *Yollick*, involves acts or omissions undertaken as part of the discharge of the attorneys' duties as counsel to an opposing party. *See Chapman Children's Trust*, 32 S.W.3d at 442 (distinguishing *Likover*, 696 S.W.2d at 471–72); *see also Essex Crane Rental Corp.*, 371 S.W.3d at 382 (noting plaintiff did not sue attorneys for representations made within scope of representation in litigation but for actions in conspiring to hide assets); *Yollick*, 447 S.W.3d at 469–70 (noting attorney, in signing letter agreement "as the Bank's agent," "not relying on his professional knowledge and

training as an attorney to make a statement in the course of representing his client in an adversarial context").

Because Guzder does not allege any conduct by Haynes and Boone independent of its settlement of the lawsuit, his allegations do not constitute conduct foreign to the duties of an attorney in the representation of a client, and, thus, they cannot serve as the basis for an actionable fraud claim against Haynes and Boone. *See Wooley*, 447 S.W.3d at 78 (applying TEX. R. CIV. P. 91a.1); *see also Authorlee*, 274 S.W.3d at 120 (concluding no cause of action existed where "[a]ll of the actions of the defendants were in connection with the settlement of a lawsuit"). Accordingly, we hold that the trial court did not err in dismissing Guzder's fraud claim against Haynes and Boone. *See* TEX. R. CIV. P. 91a.1; *see also GoDaddy.com, LLC*, 429 S.W.3d at 754 (noting dismissal appropriate if court determines plaintiff "can prove no set of facts to support a claim that would entitle him to relief"); *Alpert*, 178 S.W.3d at 404–05, 407–08 (affirming trial court's order granting special exceptions and dismissing case because plaintiff "failed to set forth a claim or plead a cause of action against [defendant-law firm] recognized under Texas law"); *Chapman Children's Trust*, 32 S.W.3d at 440–43 (holding plaintiff did not raise issue of fraud with allegations opposing attorney denied knowledge of and concealed facts, filed motions, and pushed settlement).

We further hold that because the trial court did not err in dismissing Guzder's fraud claim, it did not err in dismissing his civil-conspiracy-to-commit-fraud claim. *See Gary E. Patterson & Assocs., P.C. v. Holub*, 264 S.W.3d 180, 204 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) ("Civil conspiracy is a derivative action premised on an underlying tort.").

We overrule Guzder's first and second issues.

## Conclusion

Having overruled Guzder's first and second issues, we do not reach his third issue, in which he asserts that "[u]pon reversal, the Court should vacate the award of attorney's fees." *See* TEX. R. CIV. P. 91a.7 (providing for mandatory award of attorney's fee to prevailing party).

We affirm the judgment of the trial court.


                                                    Terry Jennings
                                                    Justice

Panel consists of Justices Jennings, Massengale, and Lloyd.

23