

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00468-CV

PHILIP GREGORY BYRD, LUCY
LEASING CO., LLC, AND PGB AIR,
INC.

APPELLANTS

V.

VICK, CARNEY & SMITH LLP,
CANTEY HANGER LLP, AND
NANCY ANN SIMENSTAD

APPELLEES

----------

## FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

----------

## CONCURRING AND DISSENTING OPINION

----------

### Introduction

I respectfully dissent from the majority's decision as to Byrd's claims for

fraud, conspiracy, and aiding and abetting alleged by Appellant Byrd (and the two

corporations awarded to him in the divorce).[1]  The majority agrees that "Cantey Hanger's preparation of a bill of sale to facilitate transfer of an airplane awarded to [Nancy] in an agreed divorce decree was conduct in which an attorney engages to discharge his duties to his client" and that such conduct was not "foreign to the duties of an attorney."  Maj. Op. at 15.  But the majority then concludes that the same alleged conduct was "foreign to the duties of an attorney" because Byrd alleged that Cantey Hanger intentionally included false information in the bill of sale for Nancy's airplane to shift sales tax liability to Byrd, which conduct Byrd labels as "fraud," and that the alleged conduct was thus also outside the course of Cantey Hanger's representation of Nancy in the underlying divorce litigation.  *Id.* at 13–14.

I cannot agree with either holding, both of which focus solely on Byrd's own conclusory labeling of Cantey Hanger's alleged conduct as fraud, rather than on the type of conduct, which, as stated above, the majority agrees was in the course of Cantey Hanger's representation of Nancy and not foreign to the duties of an attorney.  The majority correctly states the rule but seems not to apply it:  whether the litigation immunity under which an attorney generally owes no duty to a non-client for conduct in the course of representing his own client in litigation focuses on the "type of conduct in which the attorney engages, not on

---

[1]As apparent from the context within this opinion, I use the name "Byrd" to describe Philip Byrd individually or the appellants collectively.

whether the conduct was meritorious in the context of the underlying lawsuit." *Id.* at 13.

Under the majority's reasoning, by mere artful pleading labeling just about any conduct of counsel in the course of representing the opposing party in prior litigation as "fraud," the losing party to the litigation can invoke the exception for fraudulent or malicious conduct to avoid the long-established litigation immunity in Texas that protects lawyers from liability to opposing parties, and the burden is then on the attorney to conclusively disprove the pleaded exception in order to prevail on a summary judgment. This is not and should not be the law. I would affirm the summary judgment in favor of Cantey Hanger because the law firm conclusively established its immunity for the alleged conduct that occurred in the course of its representation of Nancy in the underlying divorce litigation and hold that the burden then shifted to Byrd to plead and offer proof raising an issue of fact that his suit falls within the fraud exception to the litigation immunity, which he failed to do.

## No duty based on attorney immunity

Byrd first argues that the alleged fraud by Cantey Hanger in assisting Nancy to sell her airplane to a purchaser occurred after the divorce was final, that Cantey Hanger's adversarial representation of Nancy in the divorce litigation ended when the decree was finalized, and thus that Cantey Hanger is not entitled to immunity from liability to Byrd because its conduct was not committed in the course of its representation of Nancy "in the litigation." The majority accepts

3

Byrd's argument that Cantey Hanger's adversarial representation of Nancy ended when the divorce decree was signed. But the summary judgment record conclusively shows otherwise.

Byrd acknowledges that Cantey Hanger continued to represent Nancy against Byrd (who now resides in Costa Rica) after the divorce decree was finalized by its ongoing efforts to collect $150,000 awarded to Nancy in the decree, in assisting her in recovering a judgment for that amount in Byrd's bankruptcy, and in filing a lien against the house awarded to Byrd in the decree.

Moreover, both Byrd and the majority acknowledge that the divorce decree expressly ordered the attorneys for the "non-signing" parties to draft the documents necessary to effectuate the transfers contemplated in the decree after the decree was finalized, including "documents necessary to transfer ownership of airplanes" awarded to Nancy within ten days of the date of the decree. *Id.* at 8. As the attorneys representing Nancy as the "non-signing" party, it was Cantey Hanger's responsibility, as ordered in the decree and thus in the course of its continued representation of Nancy, to draft the documents for transfer of ownership of the airplanes awarded to Nancy.[2] In light of the foregoing, I am

---

[2]That conduct of opposing counsel occurred before actual filing of suit or after rendition of judgment does not defeat the immunity of counsel for conduct in the course of representing an adverse party in litigation. *See Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 288 (Tex. App.—Fort Worth 1997, writ denied) (no cause of action against attorney for obtaining writ of garnishment against judgment debtor based on inaccurate facts); *see also FinServ Cas. Corp. v. Settlement Funding, LLC*, 724 F. Supp. 2d 662, 674–76 (S.D. Tex. 2010) (mem. op.) (law firm held immune for claims of fraud or conspiracy for conduct in seizing

4

puzzled by the majority's statement that drafting of documents for transfer and sale of the airplane after it had been awarded to Nancy by the decree "was not required by, and had nothing to do with, the decree." Maj. Op. at 13–14. Even Byrd's affidavit (quoted by the majority) in support of his response to Cantey Hanger's motion for summary judgment acknowledges that the trial court ordered Cantey Hanger in the divorce decree to draft the documents to effectuate the transfer of the airplane in question for Byrd to sign.

The general rule is that persons not in privity with an attorney cannot sue the attorney for legal malpractice. *See, e.g.*, *Barcelo v. Elliott*, 923 S.W.2d 575, 577 (Tex. 1996) (holding that a lawyer owes duty of care only to his client). For over 100 years, Texas courts have held that attorneys are authorized to "practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages." *White v. Bayless*, 32 S.W.3d 271, 275–76 (Tex. App.—San Antonio 2000, pet. denied) (affirming summary judgment because attorney owed no duty to adverse party in the context of representation of its client in litigation) (citing *Kruegel v. Murphy*, 126

property not owned by debtor by writ of execution after judgment); *Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01-06-00696-CV, 2008 WL 746548, at *9 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, pet. denied) (mem. op. on reh'g) (attorney held immune from liability for alleged misrepresentation to opposing party to secure satisfaction of arbitration award); *Lackshin v. Spofford*, No. 14-03-00977-CV, 2004 WL 1965636, at *3–5 (Tex. App.—Houston [14th Dist.] Sept. 7, 2004, pet. denied) (mem. op.) (attorney held immune from liability for making fee arrangements and charging and collecting fees to wife on credit cards in husband's name before filing divorce action as action was part of attorney's legal representation of wife in impending suit).

S.W. 343, 345 (Tex. Civ. App.—Dallas 1910, writ ref'd)).  An attorney may assert any of his client's rights without being personally liable for damages to the opposing party.  *See Bradt v. West*, 892 S.W.2d 56, 71–72 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (attorney not subject to liability to opposing attorney under any cause of action for conduct as part of representing client in litigation); *Morris v. Bailey*, 398 S.W.2d 946, 947 (Tex. Civ. App.—Austin 1966, writ ref'd n.r.e.).

Simply stated, under Texas law, attorneys cannot be held liable to opposing parties for "wrongful litigation conduct."  *Renfroe*, 947 S.W.2d at 287–88; *Bradt*, 892 S.W.2d at 71–72.  Any contrary policy would act as "a severe and crippling deterrent to the ends of justice because a litigant might be denied a full development of his case if his attorney were subject to the threat of liability for defending his client's position to the best and fullest extent allowed by law, and availing his client of all rights to which he is entitled."  *White*, 32 S.W.3d at 276; *see Mitchell v. Chapman*, 10 S.W.3d 810, 811 (Tex. App.—Dallas 2000, pet. denied) (op. on reh'g) (in suit by unsuccessful litigant against attorney of opponent in prior case, affirming summary judgment in favor of attorney on ground that relationship between lawyer and third party "was clearly adversarial" and lawyer "owed no legal duty" to opposing litigant), *cert. denied*, 531 U.S. 1152 (2001).

## "Fraud" exception to litigation immunity

The majority recognizes that whether a cause of action for fraud exists in favor of a non-client against an attorney representing the opposing party in litigation focuses on the *type* of conduct engaged in, not on whether the conduct was *meritorious*. *See Dixon Fin. Servs.*, 2008 WL 746548, at *9; *Renfroe*, 947 S.W.2d at 288; *see also Taco Bell Corp. v. Cracken*, 939 F. Supp. 528, 532–33 (N.D. Tex. 1996) (mem. op.) (Fitzwater, J.).[3]   The dispositive question in determining the *type* of conduct by the attorney is whether the attorney's conduct was part of the discharge of his duties in representing the opposing party in the context of litigation or was foreign to the duties of an attorney, not whether the alleged conduct as characterized by the pleadings is fraudulent. *Taco Bell*, 939 F. Supp. at 532 (citing *Bradt*, 892 S.W.2d at 72).  Instead, the majority focuses on Byrd's allegations of fraud, that is, intentional and knowing inclusion of false information in a bill of sale to assist Nancy in avoiding sales tax liability.  Maj. Op. at 15.  Thus, cases in which the fraud exception to an attorney's litigation immunity have been recognized are few.

---

[3]*See also Toles v. Toles*, 113 S.W.3d 899, 911 (Tex. App.—Dallas 2003, no pet.) (holding attorney's conduct in representing client in divorce litigation, even if frivolous or without merit, "is not actionable [by opposing party] as long as the conduct was part of the discharge of the lawyer's duties in representing his or her client"); *Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 442 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (holding under Texas law it is the kind of conduct that is controlling in whether fraud may be actionable against opposing attorney, not whether conduct is meritorious).

As the Supreme Court in *Chu v. Hong*, stated, "[F]raud actions cannot be brought against an opposing attorney in litigation as reliance in those circumstances is unreasonable." 249 S.W.3d 441, 446 n.19 (Tex. 2008) (citing *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 794 (Tex. 1999)). A non-client generally has no claim against an opposing lawyer in litigation for fraud in the course of litigation because a party cannot justifiably rely on his or her opponent's lawyer's representations or silence as a matter of law. *McCamish*, 991 S.W.2d at 794 (stating that reliance is not justified when the representation or non-disclosure takes place in the adversarial context of litigation); *see Chapman Children's Trust*, 32 S.W.3d at 441–42 (affirming summary judgment on fraud and conspiracy claims by opposing party because law firm's actions were undertaken in discharge of its duties to its client); *Mitchell*, 10 S.W.3d at 811–12 (same).

### No issue of fact as to fraud as an exception

The attorney's litigation immunity is not absolute. It is a "qualified" immunity in that attorneys may be held liable for fraud but only in certain narrowly defined instances based on independent actions taken *outside* the scope of the attorney's legal representation of a client or based on conduct foreign to the duties of an attorney. *See Elliott v. West*, No. 01-09-00425-CV, 2011 WL 1233434, at *3 (Tex. App.—Houston [1st Dist.] Mar. 31, 2011, no pet.) (mem. op.) (holding attorneys could be liable for fraudulent actions only if their conduct was "outside the scope of [their] legal representation of the client" or "foreign to

8

the duties of an attorney") (citing *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 406 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)).[4]

I disagree with the majority's conclusion that because Byrd alleged that Cantey Hanger misrepresented Nancy's status as manager and used her married name in the bill of sale in order to supposedly shift sales tax liability to Lucy Leasing, even if true, rendered Cantey Hanger's alleged conduct "foreign to the duties of an attorney" in the circumstances here. Assisting a client in drafting documents for transfer of title of an airplane, assisting the client in selling an asset awarded to the client in the divorce for needed cash, allowing the client to use her married name, and even assisting her in avoiding tax liability are not acts "foreign to the duties of an attorney." Each is a type of conduct in which an attorney typically engages in discharging duties to his client. *Dixon Fin. Servs.*, 2008 WL 746548, at *7–8 (noting that attorney cannot be liable to a third party for conduct that requires "the office, professional training, skill, and authority of an attorney").

Nor can I agree that the alleged conduct of Cantey Hanger was of the type that is an exception to the qualified immunity as independent commission of

---

[4]An attorney may be subject to liability for negligent misrepresentation if the attorney's manifest awareness of a non-client's justifiable reliance on false information that was furnished by the attorney with intent that the non-client so rely. *McCamish*, 991 S.W.2d at 792 (allowing cause of action for negligent misrepresentation by non-client under Restatement (Second) of Torts § 552). No such claim is made here that Byrd justifiably relied on any false information communicated *to him* by Cantey Hanger, nor could any such reliance be justified because of the adversarial nature of their relationship*. Id.* at 794.

9

fraudulent or malicious acts "outside the scope of [the law firm's] legal representation of the client." *Id.* (citing *Alpert*, 178 S.W.3d at 406). Most cases that have applied that exception involved fraudulent business schemes, not litigation. *See Likover v. Sunflower Terrace II, Ltd.*, 696 S.W.2d 468, 472 (Tex. App.—Houston [1st Dist.] 1985, no writ); *see also Poole v. Houston & T.C. Ry. Co.*, 58 Tex. 134, 137 (1882). Those cases are distinguishable because neither involved litigation. *Poole* involved conduct of an attorney on behalf of an insolvent debtor in rerouting a shipment of goods via a bogus firm by a fictitious bill of lading contrary to the shipper's order to stop the delivery, conduct that the Supreme Court characterized as "foreign to the duties of an attorney." *Poole*, 58 Tex. at 137. *Likover* involved a fraudulent scheme for renovation and sale of an apartment complex. *Likover*, 696 S.W.2d at 469–72. Subsequently, the same court that decided *Likover* distinguished that case from one involving conduct of an attorney in the course of litigation, noting that *Likover* had "involved allegations that an attorney assisted clients in fraudulent business schemes and did not involve conduct taken in the context of litigation or another adversarial proceeding." *Dixon Fin. Servs.*, 2008 WL 746548, at *9.[5]

---

[5]Byrd also relies on *Querner v. Rindfuss*, 966 S.W.2d 661, 663 (Tex. App.—San Antonio 1998, pet. denied), which, in turn, relied on *Likover* and *Poole* for the proposition that an attorney can be liable for fraud in the litigation context. But neither *Likover* nor *Poole* involved conduct in the litigation context. Moreover, the San Antonio court held that the beneficiaries presented evidence raising fact issues as to whether the attorney engaged in fraud against the beneficiaries by conspiring with the executor to convert assets as well as whether the attorney was in privity with or owed the beneficiaries fiduciary duties, thereby

10

The "type" of conduct in which the attorney was engaged, that is, whether the attorney's conduct at issue was not foreign to the duties of an attorney or occurred in the scope of representation of his client in the context of litigation against the non-client, *does not change* based merely on the labeling of a conclusory pleading by the non-client that the attorney's conduct constitutes "fraud." This is because characterizing an attorney's conduct in representing "his client's rights as fraudulent does not change the rule that an attorney cannot be held liable for discharging his duties to his client. A plaintiff . . . should not be allowed to 'salvage an otherwise untenable claim merely by characterizing it as tortious.'" *Dixon Fin. Servs.*, 2008 WL 746548, at *9 (citation omitted) (quoting *Miller v. Stonehenge/Fasa-Tex., JDC, L.P.*, 993 F. Supp. 461, 464 (N.D. Tex. 1998)).[6]

_____

placing the burden of production to establish the exception to the attorney's immunity on the beneficiaries. *Id.* at 670.

[6]In *Bradt*, the plaintiffs alleged claims for conspiracy to maliciously prosecute, malicious prosecution, intentional infliction of emotional distress, tortious interference with contractual relations, and liability under the Texas Tort Claims Act. 892 S.W.2d at 65. The court upheld summary judgment for the opposing attorneys, disallowing recovery against opposing counsel *on any cause of action* for conduct arising out of representation of his own client in litigation. *Id.* at 76; *see also Jurek v. Kivell*, No. 01-10-00040-CV, 2011 WL 1587375, at *4–6 (Tex. App.—Houston [1st Dist.] Apr. 21, 2011, no pet.) (mem. op.) (affirming summary judgment for opposing counsel on fraud claim by plaintiff based on failure to disclose existence of will during mediation); *Bosch v. Armstrong,* No. 01-08-00847-CV, 2009 WL 1635318, at *3–4 (Tex. App.—Houston [1st Dist.] June 11, 2009, pet. denied) (mem. op.) (upholding summary judgment for attorney on claims for malicious prosecution, defamation, fraud, and abuse of process by plaintiff against opposing counsel in underlying litigation); *Dixon Fin. Servs.*, 2008 WL 746548, at *9 (upholding summary judgment on claims for

11

A defendant such as Cantey Hanger that moves for a traditional summary judgment must either negate at least one element of the plaintiff's theory of recovery, *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936 (Tex. 1972), or plead and conclusively prove each element of an affirmative defense. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996) (holding defendant landlord established no "duty" as matter of law, negating element of plaintiff's claim); *see also City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). It is well settled that once the movant has done so, the burden shifts to the non-movant to produce evidence creating a fact issue on an element of the movant's affirmative defense or on its own defense. *Walker*, 924 S.W.2d at 377.

Courts have varied in how they have handled an exception such as fraud to the attorney's litigation immunity in the traditional summary judgment context. Some courts have held that the attorney must both establish its immunity as a matter of law and disprove the applicability of a pleaded exception to the immunity such as fraud as a matter of law. *Compare Toles*, 113 S.W.3d at 911–12 (defendant law firm must attack merits of and conclusively negate arguable fraud claim pleaded by plaintiff as exception to immunity); *Mendoza v. Fleming*,

---

conversion, abuse of process, fraud and conspiracy to defraud by plaintiff against opposing counsel in underlying litigation); *Alexander v. Malek*, No. 01-06-01156-CV, 2008 WL 597652, at *3 (Tex. App.—Houston [1st Dist.] Mar. 6, 2008, no pet.) (mem. op.) (affirming summary judgment on claims based on attorney's representations to opposing party regarding trial date).

41 S.W.3d 781, 787 (Tex. App.—Corpus Christi 2001, no pet.) (same), *with Reagan Nat'l Adver. of Austin, Inc. v. Hazen*, No. 03-05-00699-CV, 2008 WL 2938823, at *8–10 (Tex. App.—Austin July 29, 2008, no pet.) (mem. op.) (non-movant had burden to raise issue of fact on exception to immunity of attorney to defeat summary judgment based on immunity) (citing *Eckman v. Centennial Sav. Bank*, 784 S.W.2d 672, 675 (Tex. 1990) (op. on reh'g) and *"Moore" Burger*, 492 S.W.2d at 936–37)); *Lackshin*, 2004 WL 1965636, at *3 (noting differing burdens applied by some courts and holding plaintiff non-movant was required to and failed to plead sufficient facts showing that he fell within fraud exception to immunity); *Chapman Children's Trust*, 32 S.W.3d at 442 (holding once defendant established as matter of law that alleged actionable conduct was undertaken in course of representation of client, burden shifted to plaintiff to raise fact issue by sufficient facts to show conduct fell within exception to immunity).

I believe that the better view consistent with Texas's summary judgment practice is, as held by our sister court in Austin, that once Cantey Hanger established as a matter of law that its conduct was within the course of its representation of its client in the underlying divorce litigation against Byrd, it established its affirmative defense of immunity as a matter of law and that the burden shifted to Byrd to plead and present evidence raising a fact issue regarding the fraud exception, that is, his counter-defense of fraud to Cantey Hanger's affirmative defense. Cantey Hanger did not have to file yet another motion for summary judgment to conclusively disprove Byrd's fraud claim. *See*

13

*Reagan Nat'l Adver. of Austin*, 2008 WL 2938823, at *8–10 (holding burden shifted to non-movant to raise issue of fact as to exception to immunity; movant attorney did not have to prove a negative); *see also Zeifman v. Nowlin*, 322 S.W.3d 804, 807–08 (Tex. App.—Austin 2010, no pet.); *Palmer v. Enserch Corp.*, 728 S.W.2d 431, 435 (Tex. App.—Austin 1987, writ ref'd n.r.e.) (citing *"Moore" Burger*, 492 S.W.2d at 936–37).

Contrary to the majority's characterization of Cantey Hanger's motion for traditional summary judgment, I do not read its motion as based on failure of Byrd's pleadings to state a cause of action. Cantey Hanger attached evidence to its motion, and Byrd responded with his own summary judgment evidence consisting of his affidavit and a copy of the bill of sale, which as the majority points out, was struck by the trial court. Pleadings are not competent summary judgment evidence. *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995); *Hidalgo v. Surety Sav. & Loan Ass'n*, 462 S.W.2d 540, 543–44 (Tex. 1971). Thus, even assuming that Byrd pleaded fraud as an exception to the attorney immunity, he cannot rely on his pleadings to claim that he met his burden of producing evidence to create a fact issue. Byrd's affidavit averred that he never received the documents from Cantey Hanger to sign on behalf of Lucy Leasing, transferring the airplane to Nancy as ordered by the divorce decree (although according to him, Cantey Hanger's position is that he refused to sign them), and that Cantey Hanger never transferred the airplane to Nancy or completed its registration in her name, leaving the airplane still

14

registered to Byrd's corporation, Lucy Leasing.  Maj. Op. at 10–11.  At worst, any failure to draft the documents for transfer of the plane in question to Nancy first, and assisting Nancy in transferring the airplane directly to a purchaser by signing the bill of sale in her married name and as "manager," instead, could hypothetically be malpractice, but Cantey Hanger owed no duty of care to Byrd.

I would hold that Byrd has neither alleged nor presented evidence raising an issue of fact that he is entitled to an exception to the attorney immunity doctrine for fraud.  He has not alleged an intentional misrepresentation *to him* by the alleged bill of sale or that he relied to his detriment on any falsity in the alleged bill of sale.  *See Easton v. Phelan*, No. 01-10-01067-CV, 2012 WL 1650024, at *9 (Tex. App.—Houston [1st Dist.] May 10, 2012, no pet.) (mem. op.) (holding allegations in petition, if true, alleged no facts that would have supported a finding of independent fraudulent actions such as a fraudulent transfer, violating a direct duty to the non-client, qualifying as negligent misrepresentation, or any other claim a non-client may assert against an attorney); *see also Ortega v. Young Again Prods., Inc.*, No. H-12-0001, 2012 WL 3046116, at *9 (S.D. Tex. July 25, 2012) (mem. op. on reh'g) (plaintiff did not allege any misrepresentation by attorney or her client upon which he relied in connection with writs of execution); *FinServ*, 724 F. Supp. 2d at 675–76 (complaint merely challenged merits of actions of attorneys in executing writs by failing to perform investigations and proceeding after receiving notice that property did not belong

15

to plaintiffs, and it did not allege actions not within discharge of attorneys' duties to client).

Byrd candidly admits in his brief that the airplane in question, along with two others, was awarded to Nancy and now belong to her, that she is free to do with them as she wishes, and that although he "believes" that Cantey Hanger assisted Nancy in preparation of the bill of sale, he is unable to ascertain to what extent, if any, Cantey Hanger was even involved in the sale. The majority, as well as Byrd, also acknowledges that the divorce decree makes Nancy responsible for any ad valorem taxes, "liens, assessments, or other charges due or to become due on the personal property awarded to" her. Maj. Op. at 10. Since it appears that Nancy is thus responsible for any sales tax on the sale of the airplane, it would appear that Byrd's remedy is against Nancy by enforcement of the divorce decree for recovery of any such sales tax liability, which has yet to be charged to Lucy Leasing, or any other charge that may be incurred by Lucy Leasing as a result of the sale of the airplane.[7]

Because the fraud action against Cantey Hanger is based upon its alleged conduct in discharge of its duties in representing Nancy against Byrd in the underlying divorce litigation, and because Byrd has not alleged or raised an issue

---

[7]Nor has Byrd alleged why he would not have known that the airplane had not been transferred to Nancy when he did not receive the transfer documents to sign within ten days after the decree, if such be true, or why he was helpless as the owner of Lucy Leasing after the decree was signed, to transfer title to Nancy himself.

16

of fact sufficient to establish a claim for fraud as an exception to the immunity, I would hold that immunity bars Byrd's claim of fraud against Cantey Hanger as well as their claims of conspiracy and aiding and abetting regarding the same conduct involving the transfer and bill of sale of the same airplane.[8]  I concur in the remainder of the majority's opinion and would affirm the trial court's summary judgment in favor of Cantey Hanger as to all causes of action pleaded by Byrd.

ANNE GARDNER
JUSTICE

DELIVERED:  August 1, 2013

---

[8]*See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 (Tex. 2001) (failure of claim for fraud necessarily defeated dependent conspiracy and aiding and abetting claim); *see also Kline v. O'Quinn*, 874 S.W.2d 776, 786–87 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (absence of fiduciary duty between plaintiff and third party defeated aiding and abetting breach of fiduciary claim against defendant), *cert. denied*, 515 U.S. 1142 (1995).