Opinion issued November 20, 2014



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-13-00531-CV**

———————————

**DEANA POLLARD SACKS, Appellant**

**V.**

**THOMAS HALL AND GREGORY R. TRAVIS, Appellees**

---

**On Appeal from the 165th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-46557**

---

**MEMORANDUM OPINION**

Deana Pollard Sacks sued Thomas Hall and Gregory R. Travis for invasion of privacy. The trial court granted Hall's and Travis's no evidence and traditional motions for summary judgment against Sacks. On appeal, Sacks identifies eight issues in which she asserts that the trial court erred in granting the motions for summary judgment.

We affirm.

## Background Summary

Deana Pollard Sacks filed a dental malpractice suit against Thomas Hall, D.D.S., in May 2008. Attorney Gregory R. Travis represented Hall in that suit. As part of the discovery process in that suit, Travis obtained Sacks's dental records.

In January 2009, after engaging in a pre-suit Rule of Civil Procedure 202 discovery proceeding, Sacks filed another suit. This suit was against her former health club, the Houstonian, and two of the club's employees, Colleen Kennedy and Angelica Ximenez. The suit arose from the Houstonian's cancellation of Sacks's health club membership. Sacks alleged several causes of action, including defamation and invasion of privacy. Ximenez was represented by attorney Brian Zimmerman and the Houstonian and Kennedy were represented by attorney Andrew McKinney. Because documents containing Sacks's personal financial information had been filed during the Rule 202 proceeding, the trial court ordered the Rule 202 proceeding sealed.

In the Houstonian litigation, attorney Zimmerman sought to subpoena, from attorney Travis's law firm, Sacks's dental records that had been obtained by Travis in the dental malpractice suit. Sacks moved to quash the subpoena, and Zimmerman filed a motion to compel the production of the dental records. Zimmerman told the trial court that "based on information and belief" the dental

records would show that Sacks had abused prescription medications in the past. Zimmerman asserted that such information was relevant to the Houstonian suit because it related to Sacks's mental state, which Zimmerman averred was an issue in the suit. On October 19, 2009, the trial court in the Houstonian suit declined Zimmerman's request to obtain Sack's dental records.

On October 26, 2009, attorney Travis filed business record affidavits with the court clerk's office in the dental malpractice suit. Attached to the affidavits were Sacks's dental records, including the records of Dr. David De Jongh, a dentist who had treated Sacks. One year later, Sacks filed a motion to seal those records. She claimed that she had been unaware that her dental records had been filed with the business records affidavits. The trial court signed an order granting Sacks's motion to seal on February 1, 2011.

On March 5, 2011, in the dental malpractice suit, attorney Travis supplemented Hall's responses to discovery propounded by Sacks. Among the supplemented documents produced by Travis were the petition and a citation from the Houstonian litigation. Travis also produced the affidavit of Colleen Kennedy, which had been filed in the Houstonian litigation as part of the pre-suit Rule 202 proceeding. The affidavit had been among the documents sealed by the trial court in the Houstonian suit.

In August 2011, Sacks filed the instant suit against attorney Travis and against Hall. She asserted a claim for invasion of privacy. Sacks alleged that Travis had disclosed to attorneys Zimmerman and McKinney her "confidential medical information" contained in her dental records. Sacks asserted that she had given Travis access to the information for the limited purpose of defending Hall in the dental malpractice suit. Sacks stated that Travis did not have permission or authority to give the information to Zimmerman or to McKinney. She claimed that the information was given to the other attorneys for the purpose of giving their clients an advantage in the Houstonian litigation.

Sacks also claimed that Travis had acted with malice in disclosing her dental record information. Sacks alleged that the information provided by Travis to the other attorneys was from an erroneous entry contained in Dr. De Jongh's records. She stated that the erroneous entry could be construed to show that she had abused prescription medication. According to Sacks, Travis knew that Dr. De Jongh had corrected this entry but nonetheless provided the information found in the erroneous entry to Zimmerman. Sacks asserted that Hall was vicariously liable for Travis's conduct under a principal-agent theory of liability.

Also in August 2011, Sacks amended her petition in the Houstonian suit to add invasion-of-privacy claims against attorneys Zimmerman and McKinney.[1] She alleged that they had obtained her dental records from Travis in violation of her privacy rights.[2] Sacks asserted that Zimmerman and McKinney had engaged in improper litigation conduct by their attempts to obtain her confidential medical records through the discovery process.[3] She claimed that the attorneys had already obtained her confidential medical information "illegally" from Travis.[4] Sacks also claimed that the conduct "implicate[d] the criminal provisions of the Health Insurance Portability and Accountability Act of 1996 ('HIPAA') and/or The Health Information Technology for Economic and Clinical Health Act ('HITECH')."[5]

Zimmerman and McKinney filed a motion for traditional summary judgment, asserting as an affirmative defense that they were qualifiedly immune from Sacks's suit against them because, as attorneys, they could not be held liable

---

[1] *See Sacks v. Zimmerman*, 401 S.W.3d 336, 338 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *Id.*

for their litigation conduct in the Houstonian suit.[6] Sacks responded, averring that "Texas law is clear that a plaintiff can sue opposing counsel for common law invasion of privacy arising from their misconduct in circumventing proper judicial processes to obtain her privileged medical documents because they knew that they were not properly discoverable."[7]

The trial court granted summary judgment in favor of Zimmerman and McKinney, ordering that Sacks take nothing and dismissing her claims against them with prejudice.[8] Sacks appealed, and the Fourteenth Court of Appeals affirmed the trial court's judgment, agreeing that Zimmerman and McKinney had established their affirmative defense of qualified immunity to Sacks's invasion-of-privacy claims.[9]

In support of its holding, the Fourteenth Court of Appeals explained,

> We in no way condone the acquiring of any person's private medical records through illegitimate means. But there is simply no evidence of such an acquisition's having occurred here—rather there is mere speculation on Sacks' part based largely on statements made by Zimmerman and McKinney. These statements were made in discovery motions and hearings in which Zimmerman sought to compel Sacks to answer previously filed discovery requests. These discovery requests concerned Sacks' state of mind at the time of the

---

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.* at 343–44.

6

incident that led to the termination of her membership at the Houstonian—the incident that initiated the Houstonian suit. All of the statements Zimmerman and McKinney made upon which Sacks relies to support her invasion of privacy claim were made as part of the discovery process. In other words, Zimmerman and McKinney made these statements and filed these motions while they were discharging their duties in representing their clients.[10]

Back in this suit, Travis and Hall each filed a traditional and a no-evidence motion for summary judgment regarding Sacks's invasion-of-privacy claims. Travis and Hall denied that Travis had disclosed Sacks's medical information contained in her dental records to Zimmerman or to McKinney. Travis and Hall asserted—as Zimmerman and McKinney had in the Houstonian litigation—that they were entitled to traditional summary judgment based on the affirmative defense of qualified immunity or "litigation privilege." Travis and Hall averred that, as an attorney, Travis was immune from claims arising from actions undertaken by him in the course of litigation to represent his client. Hall asserted that, because Sacks sought to hold him liable under a principal-agent theory, he was entitled to summary judgment on the basis of Travis's qualified immunity from suit.

Sacks asserted, in her summary-judgment response to Travis's motion for summary judgment, that Travis, and by extension Hall, had not shown entitlement to qualified immunity under the litigation privilege because Travis's dissemination

---

[10] *Id.*

7

of her medical records, in the manner alleged, "was unlawful and circumvented proper judicial processes." Sacks also asserted that she had produced evidence establishing "a prima facia case of invasion of privacy" and showing the existence of "numerous facts" sufficient to defeat summary judgment. In addition, Sacks objected that Hall had not given proper notice of the submission of his motion for summary judgment.

Sacks also clarified that she is asserting two separate invasion-of-privacy torts: (1) public disclosure of private facts and (2) intrusion upon her seclusion. Sacks alleged that Travis intruded on her seclusion and disclosed her private facts by two means: (1) Travis's disclosure of information from her dental records to Zimmerman and to McKinney and (2) Travis's filing of her dental records with the court clerk in conjunction with the filing of business records affidavits in the dental-malpractice suit.

The trial court granted Travis's and Hall's traditional and no-evidence motions for summary judgment, without specifying the basis for its rulings. This appeal followed. Sacks identifies eight issues challenging the trial court's orders granting the motions for summary judgment.

## No-Evidence Summary Judgment

In her first issue, Sacks generally avers that "the trial court erred in granting summary judgment." Sacks specifically avers, in her second issue, that the trial

8

court erred in granting Travis's and Hall's no-evidence motions for summary judgment.

## A.    Standard of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). When, as here, the trial court does not specify the grounds for its grant of summary judgment, we must affirm the summary judgment if any of the theories presented to the court and preserved for appeal are meritorious. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). In reviewing a grant of summary judgment, we consider the evidence in the light most favorable to the nonmovant. *See Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009).

After an adequate time for discovery, the party without the burden of proof may move for a no-evidence summary judgment on the basis that there is no evidence to support an essential element of the non-moving party's claim. TEX. R. CIV. P. 166a(i); *see Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008). Summary judgment must be granted unless the non-movant produces competent summary judgment evidence raising a genuine issue of material fact on the

challenged elements. TEX. R. CIV. P. 166a(i); *Hamilton*, 249 S.W.3d at 426. A non-moving party is "not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." TEX. R. CIV. P. 166a (Notes & Comments 1997).

A no-evidence summary judgment motion is essentially a motion for a pretrial directed verdict. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581–82 (Tex. 2006). Accordingly, we apply the same legal-sufficiency standard of review that we apply when reviewing a directed verdict. *City of Keller*, 168 S.W.3d at 823. Applying that standard, a no-evidence point will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *see City of Keller*, 168 S.W.3d at 810.

Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact, and the legal effect is that there is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). In other words, we review a no-evidence summary judgment for evidence

that would enable reasonable and fair-minded jurors to differ in their conclusions. *See Hamilton*, 249 S.W.3d at 426 (citing *City of Keller*, 168 S.W.3d at 822).

### 1. *Invasion of Privacy: Disclosure of records to other attorneys*

Texas courts have recognized at least three separate types of invasion of privacy: (1) intrusion upon one's seclusion or solitude or into one's private affairs, (2) public disclosure of embarrassing private facts, and (3) wrongful appropriation of one's name or likeness. *See Austin Chronicle Corp. v. City of Austin*, No. 03-08-00596-CV, 2009 WL 483232, *5 n.7 (Tex. App.—Austin Feb. 24, 2009, no pet.) (mem. op.) (citing *Cain v. Hearst Corp.*, 878 S.W.2d 577, 578 (Tex. 1994); *Industr. Found. of the S. v. Texas Indus. Accident Bd.*, 540 S.W.2d 668, 682–83 (Tex. 1976)). Sacks claims the first two types of invasion of privacy: (1) intrusion upon one's seclusion or solitude or into one's private affairs and (2) public disclosure of embarrassing private facts.

In their no-evidence motions, Travis and Hall asserted that Sacks could produce no evidence to support any element of her intrusive-invasion-of-privacy claim or her public-disclosure-of-private facts claim. The tort of intrusion upon seclusion has two elements: "(1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person." *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993). The tort of public disclosure of private facts includes the

11

following elements: (1) publicity given to matters concerning the injured party's private life; (2) the publication would be highly offensive to a reasonable person of ordinary sensibilities; and (3) the matter publicized is not of legitimate public concern. *See Industr. Found.*, 540 S.W.2d at 682.

As a basis for her invasion of privacy claims, Sacks has alleged that Travis intruded on her seclusion and disclosed her private facts by disseminating information contained in her dental records to Zimmerman and to McKinney. Evidence that Travis actually disseminated information contained in Sacks's dental records to Zimmerman or to McKinney is essential to Sacks's establishment of the first element of both her intrusive-invasion-of-privacy claim and her public-disclosure-of-private facts claim.

In her brief, Sacks asserts that she "brought forward summary judgment evidence that when taken in the light most favorable to her with all reasonable inferences in her favor, established that Dr. Hall and his agent Travis gave Professor Sacks's confidential, HIPAA protected medical records without permission or court order to Zimmerman and/or McKinney." She continued, "[Travis] did this in exchange for receiving confidential financial records that were sealed by a trial court in another proceeding and other non-public information from Zimmerman and/or McKinney." We turn to that evidence.

## 2. *Sacks's evidence offered to show disclosure to other attorneys*

As summary-judgment evidence, Sacks offered the affidavit of David Sacks an attorney, who represented Sacks in the Hall dental malpractice suit. David Sacks testified in his affidavit that, when he had lunch with Travis in July 2009, Travis mentioned that he was friends with Zimmerman and with McKinney. David Sacks averred that Travis told him that he had discussed the Houstonian case and the dental malpractice case with Zimmerman and McKinney.

Sacks also offered excerpts from Travis's deposition, taken in this case, to support her summary-judgment response. In his deposition, Travis testified that he knew Zimmerman. He stated that he and Zimmerman "had a case together about ten years ago." They each had represented a different defendant in that case. With respect to communicating about the different suits filed by Sacks, Travis testified that he and Zimmerman had spoken four times. He stated that Zimmerman had called him after the Houstonian suit had been filed to find out about the dental malpractice suit. Travis also stated that, before Zimmerman tried to subpoena Sacks's dental records from Travis's law firm, Zimmerman had called Travis to give him a "heads up" regarding the subpoena. Travis identified two more telephone calls with Zimmerman that occurred after this suit had been filed against Travis.

Additionally, Sacks supported her summary-judgment response with documents that Travis produced on behalf of Hall in the dental malpractice suit. These documents were (1) the plaintiff's original petition in Houstonian suit, (2) a citation of service for the petition on Angelica Ximenez, a defendant in the Houstonian suit, (3) a copy of Ximenez's supplemental discovery responses, and (4) a copy of the affidavit signed by Colleen Kennedy—a defendant in the Houstonian suit—from the pre-suit Rule 202 proceeding in that matter.

In his affidavit, David Sacks addresses these documents. He pointed out that the petition and citation produced by Travis "do not bear markings to indicate they were obtained directly from the District Clerk's records." David Sacks also pointed out the Houstonian petition and the citation produced by Travis both have handwritten notes in their corners, indicating when the petition was served. Although there is no indication on the documents regarding when or who made the handwritten notations, David Sacks claimed, "The notes clearly appear to have been placed on the documents by someone after the papers were served to Ms. Ximenez and are the type of notes a law office representing Ms. Ximenez, such as attorney Zimmerman would make on such documents." David Sacks further stated, "Travis produced what appears to be Mr. Zimmerman's copy of Plaintiff's Original Petition in Houstonian matter."

With respect to Ximenez's supplemental discovery responses produced by her attorney, Travis, David Sacks stated in his affidavit as follows:

> At the top of the page of the [discovery response], it indicates that the documents were faxed from my law firm on or about July 6, 2009, at 5:10 p.m. The telecopier transmittal cover sheet reflects that the fax was sent only to Andrew McKinney, attorney for the Houstonian, and Brian Zimmerman, attorney for Angelica Ximenez. These are not documents filed with the court. Mr. Travis appears to have received these documents either from Brian Zimmerman or Andrew McKinney. They were not sent to Mr. Travis by me.

The transmittal cover sheet, referenced by David Sacks in his affidavit, reveals, however, that Zimmerman and McKinney were not the only recipients of the supplemental discovery response. The discovery response was also faxed to another attorney, Richard Haynes, who is identified in other exhibits as an attorney representing Sacks.

In addition, David Sacks addresses the affidavit of Colleen Kennedy, also produced by Travis on behalf of his client in the dental malpractice suit. David Sacks states that the Kennedy affidavit was filed in the Rule 202 proceeding in the Houstonian litigation. He also stated that the Kennedy affidavit, as well as other documents from the Rule 202 proceeding, was later sealed by court order. Although the Kennedy affidavit was publically on file with the district court before being sealed, David Sacks imparts in his affidavit that Travis "likely" obtained the Kennedy affidavit from McKinney or from Zimmerman.

In her summary-judgment response, Sacks also asserted that Zimmerman's actions in the Houstonian suit show that Travis disclosed the content of her dental records to Zimmerman. Sacks alleges that Travis had a copy of her dental records from Dr. De Jongh's office, containing the erroneous entry that could be construed to indicate that Sacks had abused prescription medication. According to Sacks, Dr. De Jongh had, at some point, corrected that entry in his records. Thus, she claims that the records in Dr. De Jongh's possession are the corrected records and do not contain the previous incorrect entry regarding prescription drug abuse.

Sacks asserts that Zimmerman sought to obtain her dental records from Travis's office, rather than from Dr. De Jongh, because Zimmerman wanted to obtain the records with the incorrect entry rather than the corrected records. However, while the subject dental records are purportedly part of the sealed record in the dental malpractice suit, they are not part of the summary-judgment record in this case.

In addition, Sacks supported her summary-judgment response by offering (1) Zimmerman's motion to compel production of Sacks's dental records filed in the Houstonian suit and (2) excerpts from hearings on the motions to compel. Sacks focuses on statements made by Zimmerman in seeking to compel the production of her dental records. Sacks points to a motion to compel filed by Zimmerman in which he states that "the dental records will reveal that [Sacks] has

16

abused drugs; namely prescription drugs." She also points to a motion-to-compel hearing at which Zimmerman stated that, based "upon information and belief," Sacks's dental records would show that Sacks was under the influence of prescription drugs during the incident underlying the Houstonian litigation. And Sacks claims that Zimmerman's reference to a specific drug at a hearing shows his knowledge of the content of her dental records because, she alleges, the referenced drug was the same drug contained in the erroneous entry in Dr. De Jongh's records.

In addition, Sacks offered Zimmerman's responses to interrogatories, which she had sent to Zimmerman after she sued him in the Houstonian suit. In the interrogatories, Sacks asked Zimmerman to explain the basis for his statements during the discovery proceedings that he believed Sacks's dental records would show she had abused prescription drugs. Zimmerman responded to the interrogatories by asserting the attorney work-product privilege; he did not otherwise provide an answer. Sacks asserts that Zimmerman's assertion of the privilege, without answering, indicates that he improperly obtained the records from Travis.

Lastly, to support her summary-judgment response, Sacks offered evidence showing that Travis had filed, in the court records of the dental malpractice suit, a business records affidavit from Dr. De Jongh's office. Attached to the affidavit

17

were Sacks's dental records. According to Sacks, Travis made the filing one week after the trial court denied Zimmerman's motion to compel production of Sacks's dental records in the Houstonian suit. Sacks asserted that Travis filed the records from Dr. De Jongh's office that contained the erroneous entry, which indicated she had abused prescription medication. She averred that Travis was aware that the entry had been corrected but nonetheless chose to file the erroneous records.

Sacks further asserted that she did not become aware that her dental records had been filed in the court records until one year after the filing. In his affidavit, David Sacks indicated, "It was not apparent the actual [dental] records were filed at the time because the only materials served to my office were the records affidavits and the transmittal documents." After she discovered her dental records had been filed, Sacks filed a motion to seal the records. The trial court in the dental malpractice suit ordered the filed dental records sealed. In her summary judgment response, Sacks asserted that Travis had filed her dental records in the public court records as means to "cover up" the fact that he had already disclosed the content of her dental records to Zimmerman and to McKinney.

### 3. *Analysis: No evidence of disclosure to attorneys*

Sacks asserts that, when viewed in the light most favorable to her, the foregoing evidence raises a genuine issue of material fact regarding whether Travis

disclosed the contents of her dental records to Zimmerman or to McKinney. We disagree.

Sacks points out that Travis told David Sacks that he and Zimmerman were "friends." She intimates that this indicates that Travis had disclosed her medical information to Zimmerman. Sacks emphasizes that Travis admitted in his deposition that he and Zimmerman had four conversations related to the various cases filed by Sacks.

In Travis's deposition testimony offered by Sacks, Travis explained that he knew Zimmerman because they each had represented a different party in a case 10 years earlier. He stated that he hoped Zimmerman considered him to be a friend, but Travis did not indicate that he and Zimmerman had any deeper relationship than a professional one from a past case.

Travis testified in his depostion that Zimmerman had called him to learn about Sacks's dental malpractice case. And he stated that he and Zimmerman had three other conversations: one in which Zimmerman informed Travis that he would be seeking to obtain Sacks's records from Travis's firm; a second in which Travis contacted Zimmerman when he was sued in this litigation; and a third conversation following the second. Thus, only the first conversation, in which Zimmerman had contacted Travis to learn about the dental malpractice suit, preceded Zimmerman's request for Sacks's records from Travis's firm. No evidence was offered

describing the specific content of that conversation beyond that Zimmerman had contacted Travis to find out about the dental malpractice case. In short, no evidence was presented that Travis and Zimmerman discussed Sacks's medical records in any conversation.

Sacks also relies on the documents from the Houstonian suit that Travis produced on behalf of his client in the dental-malpractice litigation. Sacks asserts that Travis obtained these documents from Zimmerman or McKinney in exchange for Sacks's dental records. In his affidavit, David Sacks stated that the documents "*appear* to be from Mr. Zimmerman's litigation file in the Houstonian matter or from Mr. McKinney's Rule 202 Petition file." (Emphasis added.) He points out that the documents have hand-written notations on them, and states, "The notes clearly appear to have been placed on the documents *by someone* after the papers were served to Ms. Ximenez and are the type of notes a law office representing Ms. Ximenez, *such as* attorney Zimmerman would make on such documents." (Emphasis added.) David Sacks also points to the affidavit of Colleen Kennedy filed in the Rule 202 proceeding that, at some later point, was sealed by the court in the Houstonian litigation.

We note that Sacks relied on these same documents when responding to Zimmerman's and McKinney's motion for summary judgment in the Houstonian suit. In its opinion affirming the summary judgments in favor of Zimmerman and

McKinney in that suit, the Fourteenth Court of Appeals stated, with respect to these documents, that "all of them were available from other sources, including either the Harris County District Clerk's office or Mr. Sacks himself." *See Sacks*, 401 S.W.d at 341. Significantly, as here, no evidence was presented linking any of these publically filed documents to Zimmerman's or to McKinney's files. As noted by the Fourteenth Court of Appeals, these documents could have come from any number of sources.

As she did in her suit against Zimmerman and McKinney, here, Sacks relies heavily on discovery propounded by Zimmerman to her in the Houstonian litigation and on statements made by Zimmerman in motions to compel and at hearings on these motions. Sacks asserts that Zimmerman's discovery requests, and his statements related to the motions to compel, show that Zimmerman already had knowledge of the contents of her dental records when he sought to obtain them. More specifically, she claims that Zimmerman's statements indicated that he knew about the erroneous entry from Dr. De Jongh's records suggesting Sacks had abused prescription drugs.

Even presuming that Zimmerman's statements indicate he had some knowledge of the erroneous entry in the Dr. De Jongh's records, no evidence showed that Travis had exclusive possession of such information. Nor was any evidence offered linking Zimmerman's acquirement of such knowledge

specifically to Travis. As with the documents in Travis's possession from the Houstonian suit, Zimmerman could have learned about the contents of Sacks's dental records from a number of sources, including other individuals involved in the legal and medical aspects of the dental malpractice suit or persons involved in Sacks's medical or dental care.

Sacks also avers that Zimmerman's assertion of the attorney-work-product privilege, made in response to Sacks's interrogatories requesting Zimmerman to disclose from whom he obtained information regarding her dental records, in some way links Zimmerman's alleged knowledge of her medical information to Travis. However, the assertion of such a commonly claimed privilege, without first offering other evidence linking Zimmerman's acquisition of the Sacks's medical information to Travis, does not support an inference that Zimmerman obtained the information from Travis.

Lastly, Sacks asserts that her evidence, showing that Travis filed an erroneous dental record as an attachment to a business records affidavit, raises a genuine issue of material fact regarding whether Travis disclosed her dental record information to Zimmerman or to McKinney. She asserts that this evidence indicates that Travis was attempting to conceal his earlier disclosure to the other attorneys by filing the records publically. She also alleges that Travis's later opposition to her motion to seal these records further shows the "cover up." While

we indulge doubts and reasonable inferences in Sacks's favor, Sacks's interpretation of the evidence would compel us to stack one inference on another: (1) Travis disclosed the contents of Sacks's dental records to the attorneys, even though no evidence shows that Travis was a more likely source of the information than any other, and (2) Travis's filing of the dental records shows he was attempting to conceal the disclosure. *See Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 728 (Tex. 2003) (explaining that an inference stacked only on other inferences is legally insufficient evidence); *Zavala v. Burlington N. Santa Fe Corp.*, 355 S.W.3d 359, 373 (Tex. App.—El Paso 2011, no pet.) ("Stacking inferences is insufficient to create a fact issue precluding summary judgment.").

In short, all of the evidence cited by Sacks to support an inference that Travis disclosed the contents of her dental records to Zimmerman or to McKinney could also give rise to any number of other inferences, none more probable than the other. *See Lozano v. Lozano*, 52 S.W.3d 141, 148 (Tex. 2001) ("The equal inference rule provides that a jury may not reasonably infer an ultimate fact from meager circumstantial evidence 'which could give rise to any number of inferences, none more probable than another.'") (quoting *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 392 (Tex. 1997)); *see also Zavala*, 355 S.W.3d at 370 ("To raise a genuine issue of material fact, the evidence must transcend mere suspicion. Evidence that is so slight as to make any inference a guess is in legal

23

effect no evidence."). Even viewing the evidence presented in the light most favorable to Sacks, as we must when reviewing the trial court's rendition of summary judgment, we conclude that Sacks presented no evidence to show that Travis disclosed information contained in her dental records to Zimmerman or to McKinney. We hold that the trial court correctly granted summary judgment on Sacks's invasion-of-privacy claims to the extent such claims are based on this assertion.

We overrule Sacks's second issue, as discussed.

## Traditional Summary Judgment

Although she focuses her invasion-of-privacy claims on Travis's alleged direct sharing of her dental records with other attorneys, Sacks also appears to tangentially premise her claims on Travis's act of filing Sacks's dental records from Dr. De Jongh's office in the public court records of the dental malpractice action. In their motions, Travis and Hall asserted that they were entitled to traditional summary judgment based on the affirmative defense that Travis's conduct of filing the dental records was protected by the attorney-immunity doctrine, or as it is commonly referred, "the litigation privilege." Sacks's third through seventh issues assert that the trial court erred in granting traditional summary judgment based on the attorney-immunity doctrine.

24

## A.     Standard of Review

Summary judgment is proper when all elements of an affirmative defense are established as a matter of law.  *See Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997); *Sacks*, 401 S.W.3d at 339.  If the movant meets its burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment.  *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).  As with our review of a no-evidence motion for summary judgment, we consider the evidence in the light most favorable to the nonmovant. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009).  We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not.  *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009).

## B.     Legal Principles Governing Litigation Privilege

The litigation privilege protects an attorney from personal liability stemming from conduct that the "attorney engages in as part of the discharge of his duties in representing a party in a lawsuit."  *Bradt v. West*, 892 S.W.2d 56, 72 (Tex. App.-Houston [1st Dist.] 1994, writ denied).  To promote zealous representation, courts have held that an attorney has "qualified immunity" from civil liability, with respect to nonclients, for actions taken in connection with representing a client in litigation.  *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex.

App.—Houston [1st Dist.] 2005, pet. denied). This qualified immunity focuses on the type of conduct in which the attorney engages rather than on whether the conduct was meritorious. *Renfroe v. Jones & Assoc.*, 947 S.W.2d 285, 288 (Tex. App.—Fort Worth 1997, writ denied). It is the kind of conduct and not its nature that is controlling. *Authorlee v. Tuboscope Vetco Int'l, Inc.*, 274 S.W.3d 111, 120 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (citing *Taco Bell Corp. v. Cracken*, 939 F. Supp. 528, 532–33 (N.D. Tex. 1996)). Thus, an attorney cannot be held liable to a third party for conduct that requires "the office, professional training, skill, and authority of an attorney." *Reagan Nat'l Adver. of Austin, Inc. v. Hazen*, No. 03–05–00699–CV, 2008 WL 2938823, at *3 (Tex. App.—Austin, July 29, 2008, no pet.) (mem. op.) (quoting *Miller v. Stonehenge/Fasa–Texas*, *JDC, L.P.*, 993 F. Supp. 461, 464 (N.D. Tex. 1998)). "Incorrect, meritless, and even frivolous conduct is not actionable if it satisfies this standard." *Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01–06–00696–CV, 2008 WL 746548, at *7 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, pet. denied) (mem. op.) (quoting *Miller*, 993 F. Supp. at 464).

The attorney's qualified immunity generally applies even if conduct is wrongful in the context of the underlying lawsuit. *Alpert*, 178 S.W.3d at 405. For example, a third party has no independent right of recovery against an attorney for filing motions in a lawsuit, even if frivolous or without merit, though such conduct

is sanctionable or contemptible as enforced by the statutory or inherent powers of the court. *Id.* (citing *Bradt*, 892 S.W.2d at 72); *see also Sacks*, 401 S.W.3d at 343 (holding that if Sacks "had any evidence that opposing counsel were abusing the discovery process, discovery sanctions would be available to her" but that Zimmerman and McKinney were nonetheless entitled to immunity). If an attorney's conduct violates his professional responsibility, the remedy is public, not private. *Renfroe*, 947 S.W.2d at 287.

The purpose behind this well-established rule is to allow an attorney to fulfill his duty and zealously represent his clients without subjecting himself to the threat of liability. *See Bradt*, 892 S.W.2d at 71. An attorney who could be held liable for statements made or actions taken in the course of representing his client would be forced constantly to balance his own potential exposure against his client's best interest. *Alpert*, 178 S.W.3d at 405; *see Sacks*, 401 S.W.3d at 342. Such a result would act as a severe and crippling deterrent to the ends of justice because a litigant might be denied a full development of his rights. *See Bradt*, 892 S.W.2d at 71.

An attorney's protection from liability is not boundless, however. He can be held liable by a third-party for actions that are not part of the discharge of his duties to his client. *See id.* at 72. In other words, the law does not provide absolute immunity for every tort committed by a lawyer that may be tangentially

27

related to his professional role or which may occur during litigation. *See id.* For example, an attorney who assaults the opposing party or lawyer during trial could be held liable for action. *See id*.

In addition, a cause of action may exist against an attorney who knowingly commits a fraudulent act outside the scope of his legal representation of the client. *Alpert*, 178 S.W.3d at 406 (citing *Likover v. Sunflower Terrace II, Ltd.*, 696 S.W.2d 468, 472 (Tex. App.—Houston [1st Dist.] 1985, no writ)). This is so because such action is "foreign to the duties of an attorney." *Id.* (citing *Likover*, 696 S.W.2d at 472 (quoting *Poole v. H. & T.C. Ry. Co.*, 58 Tex. 134, 137 (1882)).

## C. Analysis of Travis's Immunity Claim

Here, Travis's conduct of filing Sacks's dental records, along with the business records affidavit from Dr. De Jongh's office, is not an action "foreign to the duties of an attorney." *See Poole*, 58 Tex. at 137–38. To the contrary, such conduct is specifically contemplated by Rule of Evidence 902(10)(a). Pursuant to that rule, a party who intends to introduce self-authenticating business records into evidence must *file the records* and the affidavit with the clerk of the court at least 14 days before trial begins. TEX. R. EVID. 902(10)(a).

The summary-judgment record reflects that Travis was utilizing this rule when he filed Sacks's dental records along with the business record affidavit. As summary judgment evidence, Travis offered the "Notice of Filing of Business

Records Affidavit," filed in the dental malpractice suit. The notice stated, "[Defendants] provide notice, as required by Texas Rule of Evidence 902(10), that they have filed with the Court affidavits with the business records that Defendant intend to introduce at trial." The notice continued, "Defendants [have] filed affidavits and business records, produced under Rule 902(10), with the clerk of the court for inclusion with the papers in this case." The notice further stated, "This notice is provided to the other parties promptly after filing the affidavits and records." The notice identifies the business affidavit of Dr. De Jongh as one of the affidavits.[11]

The filing of Sacks's dental records pursuant to Rule of Evidence 902(10)(a) is conduct in which an attorney engages to discharge his duties to his client. *See Bradt*, 892 S.W.2d at 72. As mentioned, the focus is on the kind–not the nature–of the attorney's conduct. *Authorlee*, 274 S.W.3d at 120. The decision to utilize Rule 902(10)(a) and file self-authenticating business records in preparation for trial is an act requiring the professional training, skill, and authority of an attorney. *See Reagan Nat'l Adver.*, 2008 WL 2938823, at *3. In other words, the filing of

---

[11] Sacks is critical of Travis because he did not send copies to her of the records filed along with the business records affidavits. However, Rule of Evidence 902(10)(a) does not provide that a copy of the filed records must be sent to other parties in the case; rather, the filing party must send notice of the filing to the other parties and must make the filed records available for inspection and copying. *See* TEX. R. EVID. 902(10)(a). Sacks's notice stated that the records were available for inspection and copying.

business records pursuant to Rule 902 is not conduct "foreign to the duties of an attorney;" rather, it is the kind of conduct protected from liability. *See Sacks*, 401 S.W3d at 342 (holding attorneys Zimmerman and McKinney were qualifiedly immune from Sacks's invasion-of-privacy claim because engaging in discovery is the type of activity regularly engaged in by an attorney in zealously representing clients); *Alpert*, 178 S.W.3d at 408 (holding that litigation privilege bars fraud claim based on actions such as filing lawsuits and pleadings, providing legal advice, and awareness of settlement negotiations).

Sacks asserts that the dental records filed by Travis, from Dr. De Jongh's office, contained the erroneous entry, which indicated that Sacks abused prescription medication. Sacks claims that Travis knew when he filed the records that the entry was erroneous. She asserts that this shows Travis acted maliciously. Sacks avers that, as a result, his conduct is not entitled to the litigation privilege.

As stated, Travis's utilization of Rule 902's procedure for self-authenticating business records in preparation of trial is the kind of conduct in which an attorney engages when discharging his duties to his client. An attorney cannot be held liable to a third party for conduct that requires the office, professional training, skill, and authority of an attorney, even when the conduct is incorrect, meritless, and or frivolous. *See Dixon Fin. Servs.*, 2008 WL 746548, at *7. Whether the substance of the records was incorrect does not change the kind of conduct in

30

which Travis engaged. As an attorney representing a party in a lawsuit, Travis was entitled to advance his client's position pursuant to the rules of evidence and to pursue his trial strategy without fear of personal liability. *See Renfroe*, 947 S.W.2d at 288 (holding no cause of action against attorney for his participation in filing writ of garnishment with inaccurate facts); *see also McCampbell v. KPMG Peat Marwick*, 982 F. Supp. 445, 448 (N.D. Tex. 1997) (holding that plaintiff could not recover against attorney representing opposing party in previous suit based on attorney's allegedly false statements in affidavit and motion for new trial filed in that suit).

Sacks also asserts that Travis, and by extension Hall, as his principal, are not entitled to the protection of the litigation privilege because Travis disclosed the contents of her dental records in violation of two federal acts: (1) the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), *see* Pub. L. No. 104–191, 110 Stat. 1936 (codified as amended in various sections of 18, 26, 29 and 42 U.S.C.), and (2) a supplementation to HIPAA, the Health Information Technology for Economic and Clinical Health Act ("HITECH"), Pub. L. No. 111-5, tit. XIIII, 123 Stat. 115 (codified in 42 U.S.C. §§ 17901–17954). As Sacks points out, HIPAA limits the situations in which a healthcare provider may release a patient's medical information without the patient's consent. *See* 45 C.F.R.

§ 164.512 (2013) (defining limits and permitted disclosures of protected health information).

In her brief, Sacks avers that Travis has violated HIPAA's criminal provision, which imposes criminal penalties for wrongful disclosure of an individual's medical records. *See* 42 U.S.C. § 1320d–6(b) (providing fines and imprisonment for wrongful disclosure of individually identifiable health information). Sacks asserts that an attorney's criminal conduct may negate his entitlement to qualified immunity. *See Gaia Envtl., Inc. v. Galbraith*, No. No. 14–13–00571–CV, 2014 WL 4415221, at *5 (Tex. App.—Houston [14th Dist.] Sept. 9, 2014, no pet. h.).

In her brief, Sacks focuses her discussion of Travis's alleged criminal conduct on his purported sharing of information with Zimmerman and McKinney; she does not focus on his filing of her dental records in the court records. As discussed, Sacks has not offered evidence sufficient to raise a genuine issue of material fact regarding her allegation that Travis disclosed her dental record information to the other attorneys. In any event, Travis's filing of Sacks's dental records during an active litigation, as sanctioned by Rule of Evidence 902(10)(a), stands in stark contrast to the type of criminal acts other courts have indicated negate an attorney's entitlement to qualified immunity. *See, e.g., IBP, Inc. v. Klumpe*, 101 S.W.3d 461, 475–76 (Tex. App.—Amarillo 2001, pet. denied)

(attorney not entitled to immunity when plaintiff alleged criminal conspiracy to commit crime of theft of trade secrets contained in confidential employment guides); *Bradt*, 892 S.W.2d at 72 (citing, as an example of behavior not protected by qualified immunity, an attorney's assault of his opposing counsel during trial). Even in such cases, the focus is on whether the offending conduct occurred in the context of the attorney's discharge of his duties to his client in an adversarial proceeding; the focus was not on whether the conduct was "criminal" in nature. *See IBP, Inc.*, 101 S.W.3d at 475–76; *Bradt*, 892 S.W.2d at 72.

Lastly, Sacks asserts that the trial court could not have granted summary judgment in favor of Travis and Hall based on the attorney-litigation privilege because such privilege was preempted by HIPAA and HITECH.[12] *See* 42 U.S.C. § 1320d–7(a) (stating that HIPAA shall "supersede any contrary provision of State law" and listing types of statutes exempted from preemption). She alleges that Travis's "misconduct is not merely a violation of common law privacy rights, but also contravenes [HIPPAA and HITECH]."

HIPAA preempts state laws if it would be impossible for a health care provider to comply simultaneously with HIPAA and the state law, or if the state

---

[12] In her fifth issue, Sacks asserts that "the trial court erred in determining that . . . HIPAA protected privacy rights . . . only apply if the medical records contain 'highly embarrassing information.'" No such determination by the trial court is apparent in the record, and Sacks does not cite where in the record such determination was made.

law is an obstacle to the accomplishment of HIPAA's objectives. *See* 45 C.F.R. § 160.202. Here, the application of the attorney-immunity doctrine to disallow Sacks's private, common-law invasion-of-privacy claim for money damages does not serve as apparent obstacle to the accomplishment HIPAA's or HITECH's objectives. As Travis points out, there is no express or implied private cause of action under HIPAA. *See Acara v. Banks*, 470 F.3d 569, 571–72 (5th Cir. 2006). Thus, the doctrine of preemption has no application here.

Construing the pleadings and summary judgment evidence liberally in favor of Sacks, Travis's filing of Sacks's dental records, in the context of the dental malpractice suit, constituted conduct undertaken by an attorney to assist his client in defending against the suit. Such conduct is the kind of conduct in which an attorney engages in discharging his duties to his client. We conclude that Travis, and by extension Hall, were, as a matter of law, not liable for the conduct as alleged. Accordingly, we hold that the trial court properly granted summary judgment in favor of Travis and Hall.

We overrule Sacks's first issue and her third through seventh issues.

## Notice of Hall's Summary Judgment Motion

In her eight issue, Sacks asserts that trial court erred by granting Hall's motion for summary judgment because she did not receive timely notice of submission of the motion. In a summary judgment proceeding, the nonmovant is

entitled to 21–days' notice of the hearing or submission of the motion. TEX. R. CIV. P. 166a(c). The purpose of this rule is to give the non-movant a full opportunity to respond on the merits. *Advanced Modular Power Sys., Inc. v. E–One N.Y., Inc.*, No. 01–06–00607–CV, 2008 WL 963007, at *4 (Tex. App.—Houston [1st Dist.] Apr. 10, 2008, no pet.) (mem. op.).

Here, Hall filed his motion for summary judgment on January 4, 2013. His accompanying notice stated that the motion had been set on the trial court's January 21, 2013 submission docket. Hall's co-defendant, Travis, had filed his motion for summary judgment on January 3, 2013. Travis also sent notice to Sacks, stating that his motion was set on the trial court's January 28 submission docket.

On January 15, 2013, Sacks filed an objection to Hall's motion. She asserted that she had received only 17–days' notice, not the required 21–days' notice. Hall filed an amended submission notice on January 16, setting his motion for summary judgment on the court's January 28 submission docket, which was the same day that Travis's motion was set for submission. Even though she did not file a response to Hall's motion for summary judgment, Sacks did file a response to Travis's motion for summary judgment. The trial court signed the orders granting Travis's and Hall's motions for summary judgment on March 22, 2013.

Under the circumstances of this case, we conclude that the record does not show that Sacks's was harmed by a lack of notice. *See* TEX. R. APP. P. 44.1(a). As pointed out by Hall, Sacks sued him for invasion of privacy under a principal-agent theory, seeking to hold Hall vicariously liable as Travis's principal. Sacks did not allege that Hall had personally disclosed her dental records to anyone; rather, she alleged that Travis, acting as Hall's agent, had disclosed the contents of her dental records. For this reason, Hall's motion for summary judgment was closely aligned with Travis's motion, raising the same no-evidence points and asserting that the attorney-immunity doctrine applied to Travis's conduct forming the basis of Sacks's invasion-of-privacy claims

The harmless error rule states that before reversing a judgment because of an error of law, the reviewing court must find that the error amounted to such a denial of an appellant's rights as was reasonably calculated to cause and probably did cause "the rendition of an improper judgment," or that the error "probably prevented the appellant from properly presenting the case [on appeal]." TEX. R. APP. P. 44.1(a). The rule applies to all errors. *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011).

Here, given that Sacks's claims against Hall were derivative of her claims against Travis, we conclude that the record shows Sacks was not harmed by any late notice of the submission of Hall's motion for summary judgment. *See id.* at

297–98 (holding that error in granting summary judgment on vicarious liability claim for defendant-employer, when such relief was not requested in summary judgment motion, was harmless because summary judgment was properly granted for defendant-employee on whose tortious conduct vicarious liability was based); *Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 921 (Tex. 2005) (concluding that any error committed by granting summary judgment on insurance bad-faith and extra-contractual claims was harmless because jury's finding in later proceeding negated coverage, which was prerequisite for asserting bad-faith and extra-contractual claims); *Brown Servs., Inc. v. Brown*, No. 01–98–00304–CV, 1999 WL 681964, at *9 (Tex. App.—Houston [1st Dist.] Sept. 2, 1999, pet denied) (not designated for publication) (holding that "error, if any, in dismissing plaintiffs' claims of conspiracy to tortiously interfere with the employment contract, was rendered harmless by the jury's failure to find any of the defendants liable on the underlying tort of tortious interference with contract"); *see also Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex. 1998) (stating that notice of a hearing on a summary judgment motion is required but is not jurisdictional and holding that the trial court's error in granting a summary judgment motion without notice of the hearing was harmless in that case); *Meeks v. Gregory W. Spencer Funeral Dirs., Inc.*, No. 02–05–00266–CV, 2006 WL 1174229, at *3 (Tex. App.—Fort Worth May 4, 2006, no pet.) (mem. op.) (holding

37

that appellant had not shown harm from receiving only 23–days' notice of hearing instead of 24-days' notice required for service by mail when he had not shown what he could or would have done in the missing 24 hours).

We overrule Sacks's eighth issue.

## Conclusion

We affirm the trial court's judgment.

Laura Carter Higley
Justice

Panel consists of Justices Higley, Bland, and Huddle.